[No. 10,522.—Department Two.]

## THE PEOPLE v. JOHN CROWEY.

JURY LIST—JURY BOX—GRAND JURORS—TRIAL JURORS.—Under §§ 204, 206, 208, 209, and 211, of the Penal Code, there is no distinction in the selection between grand and trial jurors, but the names of all jurors selected are to be placed in the same box; and it is unnecessary for the Court, in making its order designating the number of grand and trial jurors required for the ensuing year, to designate separately the number of each class of jurors required.

INDICTMENT—INDORSEMENT OF WITNESSES' NAME.—The name of a witness, as given by him to the grand jury, and indorsed on the indictment, was F. D., but his true name was G. D. Held, that the Court below did not err in refusing to set aside the indictment under §§ 943, and 995, of the Penal Code.

MURDER—MANSLAUGHTER—DEFINITION—DEADLY WEAPON.—In cases of homicide it is not the character of the weapon used that determines the degree of the offense; but it is the presence or absence of deliberation and malice that makes the crime manslaughter or murder.

APPEAL from a judgment of conviction, and from an order denying a new trial, in the Superior Court of Napa County. WALLACE, J.

*Alex. Campbell*, and *Robinson & Johnston*, for Appellant.

*The Attorney-General*, for Respondent.

MORRISON, C. J.:

The defendant was convicted of the crime of murder in the second degree, and this appeal is taken from the judgment as well as from the order of the Court denying his motion for a new trial.

At the proper stage of the proceedings in the Court below, a challenge was taken to the panel of trial jurors, on the ground that they had not been selected in the manner prescribed by § 204 of the Code of Civil Procedure, as the same was amended on the 1st day of April, 1880.

The order of the Court directing the selection of grand and trial jurors was as follows: "In pursuance of § 204 of the Code of Civil Procedure, amended and approved April 1st, 1880, it is ordered that the number of grand and trial jurors necessary and requisite for the transaction of the business of this Court, and the trial of causes during the ensuing year, be 300."

The objections to this order are, that it does not state separately the number of grand and trial jurors required for the ensuing year, but simply designates the aggregate number of both; and, further, that the names of the jurors drawn and summoned under the order were placed in one box, and not in two boxes, as it is claimed they should have been. The sufficiency and validity of these objections are to be determined by a reference to the provisions of the Code on the subject.

Section 204 of the Code of Civil Procedure provides that "within thirty days after the passage of this act the Superior Court in each of the counties of this State shall make an order designating the number of grand jurors, and also, the number of trial jurors, that, in the opinion of said Court, will be required for the transaction of the business of said Court during the year ending on the first day of January, 1881. * * * And immediately after said order shall be made, the Board of Supervisors shall select, as provided in the next section, a list of persons to serve as grand jurors and trial jurors in the Superior Court of said county during the ensuing year."

Section 206. "The list to be made shall contain the number of persons which shall have been designated by the court."

Section 208. "Certified lists of the persons selected to serve

as jurors shall at once be placed in the possession of the County Clerk."

Section 209. "On receiving such lists, the County Clerk shall file the same in his office, and write down the names contained thereon on separate pieces of paper of the same size and appearance, and fold each piece so as to conceal the name thereon. He shall deposit the pieces of paper having on them the names of the persons selected *in a box*, to be called the *'jury box.'*"

Section 211. "The names of persons, whether for grand or trial jurors, shall be drawn from the *'jury box,'* and if, at the end of the year, there shall be the names of persons in the *'jury box,'* who may not have been drawn during the year to serve as jurors, the names of such persons may be placed upon the lists of jurors drawn for the succeeding year."

It is very clear, from the language of the foregoing sections of the Act of April 1st, 1880, that it was the duty of the clerk to put all of the names of the persons selected to serve as jurors for the year *in one box*, which the law denominates the "*jury box*"; and as jurors were required, their names were to be drawn from the "*jury box*." There is no distinction in the selection between grand and trial jurors, but the names of all jurors selected, whether as grand or trial jurors, were to be placed in the same box. The law did not impose upon the Court the duty of designating separately the number of each, and the order as entered was in conformity to the provisions of the Code. There was therefore no error in the Superior Court in overruling appellant's challenge to the panel of trial jurors.

The next assignment of error is, that the Court below overruled defendant's motion to set aside the indictment.

Section 943 of the Penal Code provides that "when an indictment is found, the names of the witnesses examined before the grand jury, or whose depositions may have been read before them, must be inserted at the foot of the indictment, or indorsed thereon, before it is presented to the Court"; and § 995 of the same Code provides that the indictment must be set aside "when it is not found, indorsed, and presented as prescribed in this Code."

It was claimed in the Court below, that § 943 of the Penal

Code was not complied with, inasmuch as one Gottlieb Diefenbach was examined as a witness before the grand jury, and his name was not indorsed upon the indictment.

It appears from the transcript in this case that the real name of the witness was Gottlieb Diefenbach, and the name indorsed upon the indictment is F. Diefenbach. In overruling the motion made to set aside the indictment, the Court below held that the name of F. Diefenbach was sufficiently near to the name Gottlieb Diefenbach to comply substantially with the statute of requiring the names of witnesses examined before the grand jury to be indorsed upon or inserted at the foot of the indictment. It is not necessary for this Court to inquire into the sufficiency of the reason given by the Court in denying defendant's motion to set aside the indictment, because if upon the whole case before the Court its action can be sustained, it is the duty of this Court to affirm its order. This Court said in the case of *Thompson* v. *Felton,* 54 Cal. 547: " Although the Court below, in granting a new trial, expressly limited itself to one ground, this Court is not thereby precluded from affirming the order on other grounds, if there are other grounds upon which the order should have been made." So in the case now under consideration, if there are other grounds upon which the order of the Superior Court in denying the defendant's motion to set aside the indictment should have been made, its ruling will be sustained. The object of the statute in requiring the names of witnesses examined before the grand jury to be inserted at the foot of the indictment, or indorsed thereon before its presentation, was, in part at least, to advise the defendant of the names of persons who were his accusers. In this case it appears that there was probably but one person of the name of Diefenbach in the County of Napa, (that being the county in which the indictment was found) or even in the State of California; and it further appears that he gave the name of F. Diefenbach to the grand jury. The secretary of the grand jury, testifying upon this point, says : " I recognize Mr. Diefenbach. He was before the grand jury as a witness, and gave the name of F. Diefenbach, and I put it down in the minutes in my own handwriting." Was this not sufficient authority for the grand jury to act upon, and did it not authorize them to indorse the name of F. Diefenbach on the back of the indictment?

A witness is called before the grand jury, and the secretary of that body asks him his name. He gives a name, and the name thus given is indorsed upon the indictment. The name given is not the true name of the witness. Must the court set aside the indictment? If so, it is very apparent that the ends of justice would be in many cases defeated. Indictments would be at the mercy of false, designing men, who would go before the grand jury for the purpose of laying the foundation for proceedings to set aside indictments. These are but suggestions, and we do not pass upon the abstract question in this case. The evidence of the witness Diefenbach is, that he gave the name of F. Diefenbach to the grand jury; and it further appears that he had lived in the city of Napa for three years, and was generally called "Diefenbach." In view of all the circumstances connected with this case, we are not prepared to say that the Court erred in refusing to set aside the indictment.

We will now pass to the instructions in the case. It is claimed on behalf of the appellant, that the Court erred in modifying instructions nineteen and twenty. These instructions are definitions of the crime of manslaughter, and are as follows:

19. "Manslaughter is the unlawful killing of a human being, without malice, upon a sudden quarrel or heat of passion. If two parties, upon a sudden quarrel, fight one another upon equal terms, and one slays the other, not in self-defense, but under the exclusive influence of the passion engendered by the quarrel, and no undue advantage is taken *or dangerous weapon used,* even though the party killing may be the aggressor, he is not guilty of murder.

20. "If the jury find that John Crowey and the deceased, upon a sudden quarrel, engaged in a combat upon equal terms, and after the deceased had declined any further combat, but before the passion engendered in the mind of John Crowey by the conflict had had time to cool, John Crowey struck the deceased an additional blow or blows, *not with a dangerous weapon,* by reason of said passion, he is not guilty of murder."

These instructions, as worded by defendant's counsel, did not contain the words italicized, but they were changed by the Court before given to the jury, and the words " *or dangerous weapon used* " were inserted in the nineteenth instruction, and the words

" *not with a dangerous weapon* " were introduced into the twentieth instruction.

The effect of these instructions, as we understand them, is, that if one party slay another in the heat of passion, and without malice, the crime cannot be manslaughter *if a dangerous weapon is used.* Such, in our opinion, is not the law. Whether the killing is murder or manslaughter, does not depend upon the fact whether or not a dangerous weapon was used; and to make the character of the crime depend, not upon the intention with which the act was done, but upon the character of the instrument by means of which the death-blow was inflicted, is not, in our opinion, justified by any legal principle.

In the case of *Erwin* v. *The State*, 29 Ohio St. 186, the following instructions were held erroneous: " If you find from the evidence that the defendant used a deadly weapon, in this case, and that death ensued from the use of such deadly weapon, then the law raises the presumption of malice in the defendant, and also an intent on his part to kill the decedent." The court says: " This was not an abstract proposition. It covered the case before the jury, and, in our opinion, a jury of ordinary intelligence might well understand that the law fixed the guilt of the defendant as a murderer, if the evidence showed that he took the life of the deceased by the use of a deadly weapon, without regard to other circumstances.       *       *       *

" As an abstract proposition, where the circumstance of a homicide are not known further than the mere fact that the death was caused by the use of a deadly weapon, we do not deny that the jury may from such fact alone, infer both malice and a purpose to kill. But where the attending circumstances are shown in detail, some of which tend to disprove the presence of malice or purpose to kill, it is misleading and erroneous to charge a jury that in such a case the law raises a presumption of malice and intent to kill from the isolated fact that death was caused by the use of a deadly weapon. In such case, the presence of malice or intent to kill must be determined from all the circumstances proven, including, of course, the character of the weapon."

The case of *Cotton* v. *The State*, 31 Miss. 505, is also in point. In that case, it was held that the qualification by the Court,

made to the third instruction, was clearly erroneous. The Court says: "The instruction is in substance, that if Cotton killed Smith, not in pursuance of a premeditated design, but on a sudden quarrel, the crime of murder is not made out. The modification made, is, ' unless Cotton sought the quarrel, and used a deadly weapon.' The question was, whether malice prompted the accused to kill. He interposed, as his defense, by the instruction, ' no design to kill, and that the killing was on a sudden quarrel.' The Court say to him that this is no defense, not even to mitigate the crime, if he sought the quarrel and used a deadly weapon. Now, he may have done both without being guilty of murder, for he may not, by seeking the quarrel, have intended the slightest personal injury to the deceased, and he may from sudden provocation have used his weapon, or he may have been forced to do so in self-defense, although he was the aggressor in the quarrel. The modification amounts to this: That although there must be a formed design to take life to constitute murder, yet such design is not necessary when the party killing seeks the quarrel and uses a deadly weapon. There must be proof of malice in some form; the seeking of the quarrel and using the deadly weapon, may be evidence for the purpose. But this is what the defendant below was endeavoring to meet, by showing no design to take life, because the killing occurred on a sudden quarrel. The modification virtually declares this to be no defense, if the party sought a quarrel."

In the case of *The People* v. *Freel*, 48 Cal. 436, the Court instructed the jury as follows: "You will also observe that the difference between murder and manslaughter is, that in manslaughter there is no intention whatever either to kill or to do bodily harm. The killing is the unintentional result of a sudden heat of passion, or of an unlawful act committed without due caution or circumspection." This Court held: "This is clearly erroneous. Whether the homicide amounts to murder or manslaughter merely, does not depend upon the presence or absence of the intent to kill. In either case, there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion, excited by a quarrel, sudden and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the

weakness of human nature, will disregard the actual intent, and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that deliberate and malicious intent, which is an essential element in the crime of murder."

These cases sufficiently show that it is not the character of the weapon used that determines the degree of the offense, but it is the presence or absence of deliberation and malice that makes the crime manslaughter or murder.

It is claimed on behalf of the State, that there was nothing in the case to justify the jury in finding the defendant guilty of a less degree of crime than murder in the first or second degree. It is not our purpose to express any opinion upon the evidence, and it will be sufficient for us to say, that there was some evidence tending to show that the defendant was not the aggressor; that there was a mutual combat; that both sides used deadly weapons; and enough to make it the duty of the Court to give the jury a correct definition of the crime of manslaughter.

It is unnecessary for us to examine other errors assigned, as the judgment will have to be reversed for the errors contained in the above instructions.

Judgment and order reversed.

SHARPSTEIN, J., and MYRICK, J., concurred.