[Crim. No. 639. Department One.—September 18, 1900.]

THE PEOPLE, Respondent, v. JOHN BREEN, Appellant.

CRIMINAL LAW—SETTING ASIDE INDICTMENT—FAILURE TO RESUBMIT CHARGE—SECOND INDICTMENT.—An order setting aside an indictment or information is no bar to a future prosecution for the same offense; and upon the setting aside of an indictment the failure of the court to order the charge to be resubmitted to another grand jury for examination, as directed by section 997 of the Penal Code, cannot preclude a re-examination thereof by the grand jury, nor affect the validity of a second indictment, which cannot be set aside because of such failure of the court.

ID.—NAME OF WITNESS UPON INDICTMENT—IDENTITY OF MARRIED WOMAN —CHRISTIAN NAME—HUSBAND'S INITIAL.—Where the name of "Mrs. E. Osborn" was indorsed upon the indictment, and "Mrs. Susie Osborn" was a witness at the trial, an order refusing to set aside the indictment for failure to indorse the name of the witness thereon is properly refused, where the identity of the witness appears, and the name indorsed upon the indictment merely bore the initial of her husband, who was also a witness before the grand jury.

ID.—CHARGE OF ARSON—GRAND JURORS' KNOWLEDGE OF BURNING.— Upon the trial of a charge of arson, the fact that some of the grand jurors had personal knowledge that the building was burned does not disqualify them from ascertaining whether the building was feloniously destroyed and who was the guilty party, and is not ground for setting aside the indictment.

ID.—REFUSAL OF FURTHER CONTINUANCE—FAILURE TO SHOW DILIGENCE— DISCRETION.—Where it appears that more than one continuance had been granted to enable the defendant to prepare for trial, the refusal of another continuance is in the discretion of the court; and although the evidence of the absent witnesses as shown by the affidavit of the defendant is material, yet where such affidavit fails to show diligence to secure their attendance or their affidavits that they would testify to the facts stated, or to show that there was a reasonable probability of

procuring their attendance within any reasonable time, it cannot be said that the court abused its discretion.

ID.—EVIDENCE — CROSS-EXAMINATION — INTEREST OF WITNESS—EMPLOYMENT OF DETECTIVE—AMOUNT OF COMPENSATION—HARMLESS RULING. Upon the trial of a charge of arson, where the president of a warehouse company, the building of which was burned, was a witness for the prosecution, and upon cross-examination, for the avowed purpose of showing his interest and the interest of the company in the prosecution, had testified that he was a stockholder therein, and that the company had employed a detective to ascertain the origin of the fire, the disallowing of a further question as to how much was paid to the detective for his services cannot be deemed prejudicial, in the absence of any claim or showing that the witness had any particular feeling or prejudice against the defendant in the matter of such employment.

ID.—ARGUMENT UPON APPEAL—ASSIGNMENTS OF ERROR NOT ARGUED.— Numerous assignments of error appearing in the transcript on appeal, which are mere naked statements that the court erred in making certain rulings, without any argument made or reasons given why such rulings are erroneous, will not be inquired into by this court upon appeal in order to find out reasons for or against the correctness of the rulings, if they are not apparently objectionable upon their face.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial.   Edward I. Jones, Judge.

The facts are stated in the opinion.

Ansel Smith, and Gus. G. Grant, for Appellant.

Tirey L. Ford, Attorney General, and A. A. Moore, Jr., Deputy Attorney General, for Respondent.

CHIPMAN, C.—Defendant was convicted of the crime of arson, under an indictment presented by the grand jury of San Joaquin county, and was sentenced to ten years' imprisonment at San Quentin.   He appeals from the judgment and from the order denying his motion for new trial.   There are no errors calling for any statement of the evidence as to defendant's guilt or innocence.

1. Defendant's principal reliance for reversal is that the court erred in denying his motion to set aside the indictment on the ground that the defendant had once before been in-

dicted by a former grand jury for the offense now charged, and upon the setting aside of that indictment of the court it made no order resubmitting the charge to another grand jury for examination, as directed by section 997 of the Penal Code.

Section 995 directs the court to set aside the indictment in certain enumerated cases. Section 997 provides, among other things: "If the motion is granted, the court must order that the defendant, if in custody, be discharged therefrom; or, if admitted to bail, that his bail be exonerated; or, if he has deposited money instead of bail, that the same be refunded to him, unless it directs that the case be resubmitted to the same or another grand jury, or that an information be filed by the district attorney; provided, that after such order of resubmission the defendant may be examined before a magistrate, and discharged or committed by him, as in other cases, if, before indictment or information filed, he has not been examined and committed by a magistrate." Section 999 provides: "An order to set aside an indictment or information, as provided in this chapter, is no bar to a future prosecution for the same offense." These are the sections bearing upon the question.

The statute does not make it the duty of the court to resubmit the charge to another grand jury in every case where the court on motion sets aside the indictment first found; it provides that unless the case is resubmitted the bail shall be exonerated, or if money is deposited in lieu of bail such money shall be refunded; and it also provides that, after such submission, should it be ordered, the defendant may be examined before a magistrate as in other cases, if, before indictment or information filed, he has not already been examined and committed by a magistrate. There is nothing in the statute that would forbid a re-examination where the court had failed to order it, or that can be construed to mean that a resubmission is essential to the validity of a second indictment or information. That an order setting aside an indictment or information is no bar to a future prosecution is plainly declared in section 999.

In *People v. Campbell*, 59 Cal. 243,[1] the defendant was prosecuted by information for the crime of murder, and was con-

---

[1] 43 Am. Rep. 257.

victed of manslaughter. Defendant was committed in August, 1879, and before the new constitution went into effect an indictment was presented against him, which was dismissed by the court, on motion of the district attorney; afterward, in August, 1880, the information was filed on which defendant was convicted. A motion was made to set the information aside, on the ground that the defendant had previously been indicted for the same offense, and it was also claimed, on the trial, that the dismissal of the indictment operated as an acquittal, and a plea of former acquittal was interposed. The court here held that the dismissal of the indictment was no bar to another indictment for the same offense, and that defendant was never in jeopardy under the indictment. Defendant claims that this case involved the construction of sections 1385 and 1387 of the Penal Code, and has no bearing upon the sections above referred to, and that the point he now raises has never been decided by the court. It is true that section 1387 refers to dismissals on the order of the court for want of prosecution or otherwise, while section 999 refers to orders made on motion of the accused to set aside the indictment or information. But the intention of the legislature is quite clear that in either case the order shall not constitute a bar to any future prosecution upon an indictment or information for the same offense. (See *Patterson v. Conlan*, 123 Cal. 453.)

2. The motion to set aside the indictment was based on the further ground that one Mrs. Susie Osborn was a witness at the trial, while the name of Mrs. E. Osborn was indorsed on the indictment. Section 943 of the Penal Code provides that: "When an indictment is found, the names of the witnesses examined before the grand jury . . . . must be inserted at the foot of the indictment, or indorsed thereon, before it is presented to the court"; and by section 995 this omission is made ground for the motion. The direction must be complied with or it furnishes good ground for setting the indictment aside, and it would be error to deny the motion. (*Ex parte Schmidt*, 71 Cal. 212.) The purpose of the law is to inform both the people and defendant of the names of the witnesses upon whose testimony the indictment is based (*People v. Northey*, 77 Cal. 629; *People v. Quinn*, 127 Cal. 542); and in the latter case the

name of the witness G. W. Ogden was held sufficiently indorsed as —— Ogden, where the defendant immediately after the indictment knew who was meant by the name as indorsed. In *People v. Crowey,* 56 Cal. 36, the real name of the witness was Gottlieb Diefenbach, and was indorsed on the indictment F. Diefenbach.. It appeared that he gave his name to the grand jury as F. Diefenbach, and it also appeared "that there was probably but one person of the name of Diefenbach in the county of Napa [when the indictment was found], or even in the state." It was held that the lower court did not err in denying the motion. One of the grand jurymen testified that he "saw one Mrs. Susie Osborn in the grand jury room. She was sworn as a witness and gave testimony." One E. Osborn was a witness; he was the husband of the woman who also testified and whose name in the record is Mrs. E. Osborn. In the course of Osborn's testimony relating to a conversation between him and defendant, he testified: "He [Breen] said, 'For God's sake, don't let Gould talk to Susie'—that is my wife, I mean." A letter signed "Susie Osborn" was admitted in evidence, which shows that the writer was the wife of this same E. Osborn. We think it sufficiently appears that Mrs. E. Osborn and Mrs. Susie Osborn were one and the same person.

3. The further ground for the motion is not tenable, to wit, that some of the grand jurors had personal knowledge of the fact that the building was burned. Of course, this, being the *corpus delicti,* was a material fact, but knowledge of the fact did not disqualify any one or more of the jurymen from ascertaining whether the building was feloniously destroyed and who was probably the guilty party.

4. It is next contended that the court erred in not granting defendant's motion for a continuance. It appeared that on October 16th the district attorney stated in open court and in defendant's presence that he desired to try the case on October 23d, whereupon defendant requested a continuance of two weeks, in which to prepare for trial, and the case was thereupon set for October 30th. When the case was called for trial on October 30th the defendant stated that he was not ready, and desired further time to procure certain witnesses, and filed a motion to that effect, supported by an affidavit. Section 1052

of the Penal Code provides that: "When an action is called for trial, . . . . the court may, upon sufficient cause, direct the trial to be postponed to another day." While it is the policy of the law to extend to defendant every reasonable opportunity to have his witnesses personally present at the trial, if they can be obtained without unreasonable delay (*People v. Dodge,* 28 Cal. 445), the granting or refusing the motion rests very much in the discretion of the trial court; and it is only in cases where that discretion has been abused that this court will review the action of the trial court. (*People v. Gaunt,* 23 Cal. 156.) In the present case the affidavit of defendant showed that one Charles Cornall and his wife, Gertie, and the mother of Gertie were at defendant's house from about half-past nine in the evening until about half-past eleven o'clock of the night when the building burned, and about thirteen blocks from where the burned building was situated. There was evidence that the fire was observed between 12 and 1 o'clock at night; a witness for the prosecution testified: "I heard the clock strike one a good while after I saw the fire." Another witness saw the building "about ten minutes to twelve" and observed no fire at that time, but observed it about "a quarter after twelve." Affiant stated in his affidavit that he first saw the fire that night at about twenty minutes past twelve o'clock, and was then more than seven blocks distant from it, at his own home. The evidence of the witnesses named was material, and defendant was entitled to their testimony. But the affidavit fails to show that any subpoena was issued for the mother of Mrs. Cornall, or that any effort was made to secure her attendance or account for her nonappearance; the affidavit shows no effort to procure the attendance of Mrs. Cornall, except to issue a foreign subpoena, which was returned by the sheriff of the city and county of San Francisco—"could not be found there"; but the affidavit fails to show that any effort was made to learn her whereabouts, except, as stated, that "counsel had made due and diligent inquiry to learn the whereabouts of said witnesses," but does not mention the names of the witnesses to whom affiant referred; assuming that he referred to the Cornalls, the affidavit does not set forth the character of the diligence used. The affidavit is mainly directed to an explana-

tion of defendant's inability to procure the attendance of
Charles Cornall. On the foreign subpoena, as part of the re-
turn of the sheriff appeared the following: "Last heard of him
by parties referred to in Spreckels Building, that he went to
the state of Washington five months ago." A witness testified
that "he last saw him on the steamer 'Corcoran' a month ago,
or a little longer; that said Cornall stated at that time that
he was on the 'Corcoran' as a fireman." Where this was does
not appear. There was no evidence that any effort had been
made to obtain the affidavit of Cornall, or any other of the
persons named; that he or they would testify to the facts
stated, nor is any reason given for not doing so. (*People v. De
Lacey,* 28 Cal. 589; *People v. Jocelyn,* 29 Cal. 562.) There is
no showing from which the court could say that there was a
reasonable probability of procuring the attendance of these wit-
nesses within any reasonable time. (*People v. Lewis,* 64 Cal.
401.) The defendant was before the court on the first indict-
ment in April, 1898, and on the second indictment in Septem-
ber, 1899, and the trial began on October 30, 1899, after sev-
eral continuances. We cannot say that the court abused its
discretion.

5. A witness for the prosecution, president of the warehouse
company that owned the burned building, testified on cross-ex-
amination that he had a small interest in the company as
stockholder, and that the company had employed one Gould as
a private detective to ascertain the origin of the fire. Defend-
ant's counsel asked the witness how much Gould had been paid
for his services. The question was objected to as immaterial,
and the objection was sustained, defendant excepting. The
ruling is now urged as error. The avowed object was solely to
show the company's interest in the prosecution, or the interest
of the witness as a stockholder therein. In *People v. Gillis,* 97
Cal. 542, this question of the interest of the witness was some-
what fully discussed, and it was held error to sustain an ob-
jection to the question put to the prosecuting witness in a
criminal case—"Have you employed Mr. Copeland in this case?"
Mr. Copeland was associate counsel with the district attorney.
There, and in the cases cited in the opinion, the ruling of the
court kept out of the case the fact showing the witness' inter-

est altogether. But here the witness had testified to the fact that the company had employed the detective named, and it was the employment and not the amount paid for the service that was the material fact going to show interest or prejudice.

In *People v. Goldenson*, 76 Cal. 328, the defendant was convicted of the crime of murder. Mrs. Kelly, mother of the deceased testified in her cross-examination: "I heard the Goldensons were of such a character that I did not want my daughter to go to their. house." Defendant's counsel then inquired: "What was the character that you speak about?" An objection to the question was sustained, on the ground that it was immaterial. The court said: "We see no prejudicial error in this ruling. The testimony of the witness showed that she was prejudiced against the Goldensons; the particular reason therefor is immaterial." In the present case, the counsel had developed the fact from the witness that his company had employed a detective, and it was this employment alone which was the ground for the prejudice or bias of the witness, if he had any, and not the collateral fact that the company paid the detective fifty or one hundred dollars, or any other sum per month, while in its service. A case might arise where not only the fact of the witness' prejudice might be shown, by showing that he had manifested an interest by the expenditure of money, but where also the degree of his interest might be inquired into in order to measure the depth and violence of his prejudice; the jury·is entitled to know, not only that prejudice exists, but the full extent of that prejudice, and a wide cross-examination is allowable for that purpose. In the present instance, however, there was no claim made that the witness had any particular feeling. in the matter against the accused, or any prejudice at all, except as it might be inferred from the fact that the company of which he was president had employed a detective. There was no prejudicial error in not permitting the defendant to show just what the company paid the detective for his services.

6. There are some seventeen other assignments of errors, as to which the remarks of the court in *People v. Woon Tuck Wo*, 120 Cal. 294, 297, 298, are directly pertinent: "They are mere naked statements that the court erred in making certain enum-

erated rulings, without any argument made or reasons given why said rulings are erroneous. Under these circumstances we do not feel called upon to prosecute an independent inquiry in order to find out reasons for or against the correctness of the rulings. (See *People v. Gibson,* 106 Cal. 475.) Upon the face of the objections we see no error."

The judgment and order should be affirmed.

Haynes, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

.Van Dyke, J., Garoutte, J., Harrison, J.