[Crim. No. 592. First Appellate District.—November 12, 1915.]

THE PEOPLE, Respondent, v. HENRY S. TURNER, Appellant.

CRIMINAL LAW—PRELIMINARY EXAMINATION—ORDER OF COMMITMENT—INDORSEMENT UPON DEPOSITION—CONSTRUCTION OF CODE.—The provision of section 872 of the Penal Code that if it appears upon a preliminary examination that a public offense has been committed and that there is sufficient cause to believe that the defendant is guilty thereof, the magistrate must make or indorse on the complaint an order, signed by him, to that effect, is directory, in so far as the indorsement of the order on the complaint is concerned; and it is sufficient if the indorsement be reduced to writing and signed by the magistrate and entered upon his official docket or upon the complaint or deposition.

Id.—Omission to Make Indorsement—Insufficient Ground for Reversal. — A judgment of conviction, however, will not be set aside because of the failure of the magistrate to make the indorsement of the order of commitment on the complaint or to have it entered in his docket and signed until after a motion to dismiss the information on that ground had been filed, where it is not made to appear that the defendant was deprived of any substantial right by reason of such omission.

Id.—Libel—Impeachment of Reputation—Publication of Alleged Oath of Knights of Columbus.—The publication of an article in a newspaper charging the members of the Fourth Degree of a fraternal organization known and called the Knights of Columbus with the taking of an oath which is in itself a violation of their oath of allegiance and of the essential duties and bonds of American citizenship, is an impeachment of their reputations, within the meaning of section 248 of the Penal Code.

Id.—Individual Inapplicability of Article—Insufficient Defense. In a criminal prosecution for the publication of such a libel it is no defense to claim that the article had no individual application.

Id.—Privileged Character of Libel—Lack of Instruction—Insufficient Ground for New Trial.—The defendant in such a prosecution is not entitled to a new trial on the ground that the record supports the theory that the publication was made for the purpose of enabling the voters at an approaching election to cast their ballots more intelligently, and was therefore a privileged communication, where no instruction was requested or given upon the subject of such communications, notwithstanding the defendant relied upon the privilege in making his defense.

Id.—Candidates for Office—Protection from Libel.—A candidate for office is as much entitled to protection from defamation as any other citizen, and a public journal or individual who indulges in defamatory assertions about candidates for office is equally responsible for his acts with those who commit the same offense against private individuals, and such libelous matter published against a candidate for a public office is not a privileged communication.

Id.—Opinion as to Publication—Statement of Judge—Instruction to Disregard.—A statement made by the judge in the presence of the jury in giving his reasons in denying the defendant's motion to dismiss the case, that he thought the publication might fairly be interpreted to mean that all persons who were admitted to the Fourth Degree of the Knights of Columbus had taken the published oath, is not reversible error, where the court, upon attention being called to the apparent inadvertence, admonished the jury to disregard such statement.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order denying a new trial. W. A. Beasley, Judge presiding.

The facts are stated in the opinion of the court.

Ralph H. Smith, and Aaron L. Sapiro, for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, for Respondent.

KERRIGAN, J.—The defendant was charged by information with the crime of libel, and was tried and convicted. This appeal is from the judgment of conviction and from an order denying defendant's motion for a new trial.

Upon his arraignment the defendant moved the court to set aside the information upon the ground that he had not been legally committed for trial by a magistrate. The motion was denied. Such denial is the first of the grounds urged by the appellant for the reversal of the judgment.

Section 872 of the Penal Code provides that if it appears upon an examination that a public offense has been committed, and there is sufficient cause to believe that the defendant is guilty thereof, the magistrate must make or indorse on the complaint an order, signed by him, to that effect. Under the authorities, in so far as the section requires that the order shall be indorsed upon the complaint, it may be regarded as directory; and it is sufficient if the indorsement be reduced to writing and signed by the magistrate and entered upon his official docket or upon the complaint or deposition (*People* v. *Tarbox*, 115 Cal. 57, [46 Pac. 896] ; *People* v. *Wilson*, 93 Cal. 377, [28 Pac. 1061].) In this case the order of commitment was neither indorsed upon the complaint or deposition, nor was the entry of such order in the magistrate's docket, made by his stenographer, signed by the magistrate until after the motion to dismiss the information was filed. In other words, the record discloses that prior to the filing of the motion the magistrate did nothing more at the conclusion of the preliminary hearing than to announce and cause to be entered in his docket an order that the defendant should be held to anwser in the superior court to a charge of libel, and fixing the bail.

While it is no doubt true that the terms of section 872 of the Penal Code should be complied with before the district attorney is warranted in filing an information against a person, still it does not appear that the defendant was deprived of any substantial right by reason of the omission of the magistrate. If the motion had been granted, another preliminary examination could have been held under the provisions of sections 997–999 of the Penal Code (*Ex parte Baker,* 88 Cal. 84, [25 Pac. 966]; *People* v. *Breen,* 130 Cal. 72, [62 Pac. 408], wherein the omission now complained of could have been supplied. Under the provisions of section 4½, article VI, of the constitution, it not appearing that the defendant was injured by the failure of the magistrate to make the required indorsement upon the complaint before the information was filed, we cannot now, after a fair trial, set aside the judgment of conviction because of such omission.

Defendant demurred to the information on the ground that it did not state facts sufficient to constitute a public offense. The demurrer was overruled, and he now challenges the correctness of such ruling.

The question presented is whether or not the publication complained of comes within the definition of the offense found in section 248 of the Penal Code. That section, in so far as it is pertinent to the offense here involved, declares: "A libel is a malicious defamation, expressed . . . by . . . printing, . . . tending, . . . to impeach the honesty, integrity, virtue, or reputation . . . of one . . . and thereby to expose him to public hatred, contempt, or ridicule."

The information charges that the defendant, the proprietor and publisher of a certain newspaper called "The World-Issue," committed the crime of libel in that on the twenty-second day of August, 1914, he unlawfully and wrongfully caused to be printed and published in said paper in Santa Cruz County, of and concerning the prosecuting witnesses, who lived in that county and who were members of the Fourth Degree of that certain fraternal organization known and called the Knights of Columbus, the following article:

"Can you vote for a man for public office who subscribes to the following?

"Knights of Columbus Oath
" (Extracts—4th Degree)

" 'I do now denounce and disown any allegiance as due to any heretical king, prince or state, named protestant or

Liberals, or obedience to any of their laws, magistrates or officers.

" 'I do further promise and declare that I will have no opinion or will of my own or any mental reservation whatsoever, even as a corpse or cadaver (*perinde ac cadaver*), but will unhesitatingly obey each and every command that I may receive from my superiors in the militia of the Pope and of Jesus Christ.

" 'That I will in voting always vote for a Knight of Columbus in preference to a protestant—especially a mason, and that I will leave my party to do so; that if two catholics are on the ticket I will satisfy myself which is the better supporter of Mother Church and vote accordingly.

" 'That I will not deal with or employ a protestant if in my power to deal with or employ a Catholic. That I will place Catholic girls in protestant families of the heretics.

" 'That I will provide myself with arms and ammunition that I may be in readiness when the word is passed, or I am commanded to defend the church as an individual or with the militia of the Pope.'

"To the quiet, law-abiding, liberty-loving American citizen it is almost unbelievable that any fellow-citizen or body of them can seriously undertake or hope to overthrow our present form of government and replace it with an absolute monarchy. It is still more unbelievable that such a proposed monarchy should be dominated by a foreigner, and that such a change be brought about under the guise of religion. Yet if such a citizen will but open his eyes to the condition existing under his very eyes, and open his ears to the open, avowed purpose of the Roman Catholic Church, he will no longer rest easily in his present peaceful slumber.''

It would seem that a mere statement of the published oath, coupled with an averment that it was false and malicious, would be sufficient to bring the publication within the terms of section 248 of the Penal Code. It would be a severe reflection upon the condition of the law of libel if it permitted to go uncondemned the publication of articles such as this, if false. It is clear that the published oath, if believed by the community to be taken by the members of the Fourth Degree of the Knights of Columbus, would have a tendency to expose those persons to hatred, contempt or ridicule. While the publication may not, as claimed by the defendant, directly im-

peach their honesty and integrity, it does in a most direct
and vital way assail their loyalty as citizens by charging them
with the taking of an obligation which is in itself a violation
of their oath of allegiance and of the essential duties and
bonds of American citizenship, and thus in a general sense
impeaches their reputations, and exposes them to those atti-
tudes of public feeling described in the section of the Penal
Code.

At the time of the publication of the article in question it
appears from the record that there was a political campaign
in progress in Santa Cruz County, where the article was pub-
lished; and perhaps it is fair to infer from the record that
some of the candidates for election were members of the
Fourth Degree of Knights of Columbus, but none of the
prosecuting witnesses were such candidates. With the record
in that condition defendant contends, first, that the publica-
tion was not of and concerning the prosecuting witnesses;
and, secondly, that the alleged libelous matter applies to a
class or generally to all of the members of the Fourth Degree
in the fraternal order mentioned, and therefore has no indi-
vidual application, and that for these reasons the judgment
of conviction cannot stand.

While the published matter may have been intended to
apply only to persons who were candidates for office at that
election, nevertheless in terms and in effect it refers to each
and every member of the order of the degree named. It is
undisputed that the publication was false, that the prosecut-
ing witnesses were members of the society of the degree in
question, and the inevitable conclusion to be drawn from the
article is that every member of the order of the fourth degree
had taken and subscribed to the published oath. The article
asperses the character of such members and ascribes to them
base and dishonest motives, and as to them its publication
constituted criminal libel whether at that time a candidate
for public office or not. The points presented by defendant
might be urged with some force in a civil action in mitiga-
tion of damages, but we do not believe they are good in a
criminal prosecution for libel, for, as is said in the case of
*State* v. *Brady,* 44 Kan. 435, [21 Am. St. Rep. 296, 9 L. R. A.
606, 24 Pac. 948, 949] : ''The law is elementary that the libel
need not be on a particular person, but may be upon a family
or a class of persons if the tendency of the publication is to

stir up riot and disorder and incite to a breach of the peace. It is obvious that a libelous attack upon a body of men, though no individual may be pointed out, may tend as much or more to create a public disturbance as an attack on one individual and a doubt has been suggested whether the 'fact of numbers does not add to the enormity of the act.' "

This statement is a correct exposition of the law and of the causes of its existence. (*People* v. *Crespi,* 115 Cal. 50, [46 Pac. 863].)

The defendant next contends that the court erred in denying his motion for a new trial. He argues that the record supports the theory that the publication was made for the purpose of enabling the voters at the approaching election to cast their ballots more intelligently, and that therefore, under the terms of section 256 of the Penal Code, the publication must be deemed a privileged communication. That section provides: "A communication made to a person interested in the communication, by one who was also interested or who stood in such relation to the former as to afford a reasonable ground for supposing his motive innocent, is not presumed to be malicious, and is a privileged communication."

Assuming for the moment that this publication comes within the privilege of that section, still we are satisfied that this case should not be reversed upon the ground stated. No instruction was requested or given upon the subject of privileged communications of the sort defined by that section, but the record shows that the defendant was relying upon this form of privilege in presenting his defense, and since the jury are the judges of both the law and the facts in criminal libel cases, the defendant should have requested the specific instruction if he desired to have the jury more directly advised as to his contention than it was by the evidence or argument of counsel. We are further satisfied, however, that section 256 of the Penal Code has no application to cases of this character. Whatever the rule may be in other jurisdictions it has been expressly decided in this state that a candidate for office is as much entitled to protection from defamation as any other citizen, and that a public journal or an individual who indulges in defamatory assertions about candidates for office is equally responsible for his acts with those who commit the same offense against private individuals; and that such libelous matter published against a candidate for a pub-

lic office is not a privileged communication. (*Jarman* v. *Rea,* 137 Cal. 341, 350, [70 Pac. 216] ; *Edwards* v. *San Jose Printing & Pub. Co.,* 99 Cal. 431, [37 Am. St. Rep. 70, 34 Pac. 128] ; *Aldrich* v. *Press Pr. Co.,* 9 Minn. 123, [86 Am. Dec. 84] ; *Sweeney* v. *Baker,* 13 W. Va. 158, [31 Am. Rep. 757] ; *King* v. *Root,* 4 Wend. (N. Y.) 113, [21 Am. Dec. 102] ; *McAllister* v. *Detroit Free Press Co.,* 76 Mich. 338, [15 Am. St. Rep. 318, and cases noted, 43 N. W. 431].) In the present case it is not disputed that the publication was false. It was therefore not privileged.

During the trial of the case, in denying a motion made by the defendant to dismiss, the court gave his reasons therefor in the presence of the jury, and, among other things, said that examining the publication by its four corners as one would a contract, it might fairly be interpreted to state that all persons who were admitted to the fourth degree of the Knights of Columbus had taken the published oath: "in fact the court thinks the paper is fairly interpreted to mean just that." This remark defendant insists constituted error on the part of the learned trial judge, for which the case must be reversed. At the time, upon attention being called to the apparent inadvertence, the court explained to the jury that the remarks were not directed to them, that they were addressed solely to the counsel in the case, and made incidental to the denial of the motion before the court. Subsequently in the instructions the jury were repeatedly admonished that they were not to be in any way influenced in reaching their verdict by the observations of the court; that they were the sole judges of the facts in the case, and that the interpretation of the language of the publication was a matter to be wholly determined by them. It will, of course, be presumed in this behalf that the jury followed the plain admonition of the court, and hence that in the matter suggested the defendant suffered no injury.

Other points made by the appellant relate to the admission or rejection of evidence, and to instructions given to the jury. We have examined them, but without finding therein anything upon which to ground appellant's argument for a reversal of the judgment.

The judgment and order are affirmed.

Richards, J., and Lennon, P. J., concurred.