HAINES, P. J.
 

 The defendant Michael C. Faber appeals from a judgment of the Municipal Court of the City of San
 
 *Supp. 754
 
 Diego pronounced against him, after his conviction by a jury in that court of the crime of slander. The complaint was in two counts, of which the first was as follows:
 

 “That said Michael C. Faber on or about the 5th day of July, 1937, in San Diego Township in the said County of San Diego, State of California, and before the making or filing of this complaint did wilfully, unlawfully and maliciously utter certain slander, to-wit: that said defendant did then and there orally state to one J. J. Clausey and to one Mrs. J. J. Clausey in substance as follows: ‘I want to show you what the set-up is between Tom Sharp and Ivan Smith. Tom Sharp is the father of Mrs.'Smith’s baby by her, and Tom Sharp paid Ivan Smith to marry Mrs. Smith so as to keep it quiet’; all of which was and is false and untrue, and was well known by said defendant to be false and untrue; and which statement so made by said defendant as aforesaid then and there tended to impeach the virtue, honesty and reputation of Mrs. Geraldine Smith, a living person.”
 

 The second count was identical with the first except that the concluding clause contained the name of Ivan Smith instead of Mrs. Geraldine Smith as the person slandered.
 

 The first question to be considered is whether or not the complaint states any public offense. It is claimed that it does not in that, though it is laid under section 258 of the Penal Code which makes the specific intent to injure another an ingredient of the offense, no such intent is actually charged. That section first defines slander so far as the definition is here applicable as “A malicious defamation orally uttered . . . tending ... to impeach the honesty, integrity, virtue or reputation or disclose the actual or alleged defects of one who is living . . . and thereby to expose him or it to public hatred, contempt or ridicule.” The section goes on thereafter to declare that ‘ ‘ every person who wilfully, and with a malicious intent to injure another, utters any slander is punishable” etc. It seems, then, that the requirement that a “malicious intent to injure another” should exist as a part of the act for which the punishment is denounced amounts to making the existence of such specific intent a part of the definition of the crime, although the term “Slander” is, as we just saw, defined in the preceding and independent sentence without the use of the word “intent” nor any word of like meaning unless it be the adjective
 
 *Supp. 755
 
 “malicious”. Unless, then, the word “malicious” can in itself be taken to import an intent to injure another, it would necessarily follow that slander generally as defined in the first sentence of section 258 is something more comprehensive than criminal slander as defined in the next sentence of that section. There is, of course, no doubt that “the word ‘wilfully’ as used in the criminal law implies simply the purpose or willingness to commit the unlawful act”
 
 (People
 
 v.
 
 California Protective Corp.,
 
 76 Cal. App. 354, 363 [244 Pac. 1089].) It does not necessarily imply any specific intent to violate law or to injure another and where specific intent is not part of the definition of the crime, such intent as is required to make out the crime is conclusively presumed from the intentional performance of the act denounced, though the offender was honestly mistaken as to the meaning of the law. Where specific intent enters into the definition of the crime, however, mere intentional commission of the act denounced is not enough, and therefore it is not enough to charge that it was “wilfully” done. A different question is presented by the allegation that it was “maliciously” done because malice is ordinarily understood as importing bad temper toward another which, combined with the allegation of an overt injurious act, would appear inseparable from an intent to injure another. In
 
 People
 
 v. Mooney, 127 Cal. 339 [59 Pac. 761], however, it was holden that under section 447 of the California Penal Code as it then read, defining the crime of arson as the “wilful and malicious burning of a building with intent to destroy it”, the specific intent to destroy the building was a part of the definition of arson and, therefore, was an essential ingredient of the offense, and must appear distinctly in the averments of the information,
 
 in addition
 
 to the averments of wilful and malicious burning. The latter words were said to “import only that criminal intent which is a necessary part of every felony or other crime”, but it is said that “they do not necessarily include the specific purpose to destroy the building, which is an element of the crime of arson”. (See, also,
 
 People
 
 v.
 
 Nelson,
 
 58 Cal. 104,
 
 People
 
 v.
 
 Smith,
 
 103 Cal. 563 [37 Pac. 516], and
 
 People
 
 v.
 
 Schiaffino,
 
 73 Cal. App. 357 [238 Pac. 725].)
 

 Counsel for the People have called our attention, on the other hand, to the case of
 
 State
 
 v.
 
 Fosburgh,
 
 32 S. D. 370,
 
 *Supp. 756
 
 375, 376 [143 N. W. 279, 280, Ann. Cas. 1916A, 424], in which a conviction for criminal libel was affirmed. The definitions of libel and of the crime of libel in South Dakota were contained respectively in sections 315 and 316 of the Penal Code of that state, as follows: “See. 315—Any malicious injury to good name, other than by words orally spoken, is libel.” “See. 316—Every person who wilfully, and with malicious intent to injure another, publishes any libel is guilty of a misdemeanor.”
 

 It will be seen that there is a close parallel between the manner in which these definitions were framed under the South Dakota libel statute, and manner in which the definitions are laid down in respect to slander in section 258 of the California Penal Code.
 

 It was, however, elsewhere provided in the South Dakota Penal Code that: “Words used in a Statute to define a public offense need not be strictly pursued in the indictment or information, but other words containing the same meaning may be used.”
 

 In these circumstances it was held that an information sufficiently charged the crime of libel where it set forth that the defendant did “then and there unlawfully, wilfully and maliciously write and publish of and concerning one John D. Smull, which was intended to and did refer to the said John D. Smull, a certain false, scandalous and malicious libel”, and, further, that “said libel was a malicious defamation of the character of said John D. Smull, tending to provoke him, the said John D. Smull, to wrath, and expose him, the said John D. Smull, to public hatred and ridicule, and to deprive him, the said John D. Smull, of the benefit of public and social intercourse”.
 

 In this state, section 1426 of the Penal Code was amended in 1931 by adding the following matter:
 

 “In charging an offense each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be
 
 *Supp. 757
 
 a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused, ...”
 

 In our view this enactment brings our statute sufficiently into accord with that of South Dakota to make the reasoning of
 
 State
 
 v.
 
 Fosburgh, supra,
 
 applicable to the instant case and to do away with the technicality formerly required by such cases as
 
 People
 
 v.
 
 Mooney, supra.
 
 We think the use of the word “malicious” in the complaint under review should, in the light of this amendment to the Penal Code, be held to sufficiently import an intent to injure another, and that each count of the present complaint should be held to state a public offense.
 

 Upon the trial it appeared that at the time involved Ivan Smith was chief of police of the city of Coronado and Faber and one Clausey were members of the board of trustees thereof, Clausey having just been made mayor. The board was called upon to consider the propriety of Smith’s retention as chief. Faber, in these circumstances, called at Clausey’s home and asked the latter, in the presence of Mrs. Clausey, to name him a committee of one to investigate the situation in the police department as it concerned Smith. Clausey demurred and said in effect that if anyone was to conduct the investigation, he would. Thereupon, Faber made the assertions set forth in the complaint, after having secured the promise both of Clausey and his wife not to repeat what he was about to say.
 

 The evidence amply established that the assertion made by Faber against the Smiths was wholly untrue; that the child in question was their adopted child and that neither one of them was its natural parent.
 

 The verdict merely found the appellant “Guilty as charged in the complaint”. The municipal court treated the verdict as a conviction of the defendant on both counts and pronounced judgment of fine and imprisonment on both counts, the two terms of imprisonment to run consecutively. It is now claimed on appellant’s behalf that it was error for the jury not to have found specifically on each count severally. Section 954 of the Penal Code allows the charging in a complaint of two or more offenses connected together in their commission, or different statements of the same offense or two or more offenses of the same class under separate counts but goes on to require that “each offense upon which the
 
 *Supp. 758
 
 defendant is convicted must be stated in the verdict”. In
 
 People
 
 v.
 
 O’Keefe,
 
 54 Cal. App. 649 [202 Pac. 476], where two burglaries were charged in separate counts of the same complaint, a verdict finding the defendant “guilty of burglary in the first degree ’ ’ was held sufficient, the court saying at page 651 that “since evidence was received on both charges and both were submitted to the jury, we think the verdict in the form in which it was rendered was a verdict of guilty on both counts ’ ’. That case did not reach the Supreme Court. In
 
 People
 
 v.
 
 Spagnoli,
 
 58 Cal. App. 154 [208 Pac. 185], in which the defendant was charged in violation of a statute with manufacturing “certain intoxicating liquor, to-wit, wine and Jackass brandy ...” apparently in a single count and it appeared that a single process of manufacture produced first a wine and then the brandy referred to, it was said (p. 160) that “the act of the defendant really constituted but one offense, although involving the manufacture of two kinds of liquor” and that “it would follow that the jury was not in error in finding a verdict of guilty of the offense charged in the information instead of finding two separate verdicts as required by said section 954 where separate offenses are charged”. In this case a hearing by the Supreme Court was denied.
 

 In the instant case, though the complaint is framed in two counts, the conduct charged against the defendant in the second is identical with that charged in the first. The utterance is the same and the circumstances the same. It would be impossible for the defendant to be guilty upon either count without being guilty upon both. In these circumstances, regardless of whether or not the rule announced in
 
 People
 
 v.
 
 O’Keefe, supra,
 
 ought to be followed, as to which we express no opinion, we think the situation here presented is closely analogous to that involved in
 
 People
 
 v.
 
 Spagnoli, supra,
 
 and that while it would be better practice to ask the jury to find separately on each count, the municipal court was not in error in treating the verdict as sufficient in form as a conviction upon both counts.
 

 It is further claimed that the trial court erred in denying defendant’s motion, made at the close of the People’s case, to dismiss the action for insufficiency of evidence to sustain any verdict of conviction. A preliminary objection is made by the district attorney to any consideration of this
 
 *Supp. 759
 
 contention on the ground that the ruling complained of is not appealable. (Pen. Code, sec. 1466.) Conceding that to be true, it is nevertheless a matter properly reviewable on the appeal from the judgment. Technically, of course, a motion to dismiss for insufficiency of evidence is not in order, the proper motion being to advise the jury to acquit in such a case. (Pen. Code, sec. 1118;
 
 People
 
 v.
 
 Lewis,
 
 124 Cal. 551 [57 Pac. 470, 45 L. R. A. 783].) Substantially, however, the appellant’s contention under this head raises generally the question of whether the evidence, as disclosed by the record, can, as a matter of law, justify the conviction, an inquiry manifestly proper, since it goes to the basis for the judgment.
 

 We have, in pursuing that inquiry, to examine the contention that the communication here involved was privileged.
 

 In discussing the question of privilege, it is proper to notice at the outset that there is considerable difference between the provisions applicable respectively to civil actions and to criminal prosecutions, for slander.
 

 The provisions of the Civil Code, in so far as we have occasioned to mention them (sec. 47), define privileged communications as those made:
 

 “1.—In the proper discharge of official duty.
 

 “2.—In any (1) legislative or (2) judicial proceeding or (3) in any other official proceeding authorized by law, . . .
 

 “3.—In a communication without malice to a person interested therein, (1) by one who is also interested, or (2) who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent.
 

 “4. — . . .
 

 “5. — . . . ”
 

 In a civil action the privilege extended by the first two subdivisions of section 47 has been held to be absolute and unqualified
 
 (Hale Co.
 
 v.
 
 Lea,
 
 191 Cal. 202, 205 [215 Pac. 900]) provided the publication is relevant to the official duty involved or to the cause or subject of inquiry.
 
 (Wyatt
 
 v.
 
 Buell,
 
 47 Cal. 624.) The sort of relevancy required is further defined in
 
 Irwin
 
 v.
 
 Newby,
 
 102 Cal. App. 110 [282 Pac. 810, 283 Pac. 370], On the other hand, the forms of privileged communications defined by subdivisions 3, 4 and 5 of section 47, applicable to libel and slander alike, “are protected by a qualified privilege only; that is, to make the de
 
 *Supp. 760
 
 fenses available, the publication and the circumstances surrounding it must conform to the conditions laid down in the statute”. (16 Cal. Jur. 67, citing
 
 Longsworth
 
 v.
 
 Curson,
 
 56 Cal. App. 489 [206 Pac. 779].)
 

 In the opinion of the Supreme Court denying a hearing in the last-mentioned case it is said (p. 497) :
 

 "Under our Code, if a publication is libelous on its face, or is shown to be so by extrinsic evidence, the plaintiff may recover compensatory damages without proof of malice. When the defendant pleads that the publication was made without malice and upon a privileged occasion of the character defined in either subdivision 3, 4 or 5 of Section 47, the defendant must first make a
 
 prima facie
 
 showing of the absence of malice and then, but not until then, the plaintiff may in rebuttal show actual malice on the part of defendant.”
 
 (Snively
 
 v.
 
 Record Pub. Co.,
 
 185 Cal. 565 [198 Pac. 1].)
 

 By contrast a "malicious intent to injure another” is made, by section 258 of the Penal Code, an essential ingredient of the crime of slander.
 

 As respects privilege, that section goes on to provide that:
 

 "Words uttered in the proper discharge of an official duty, or in any legislative or judicial proceeding, or in any other official proceeding authorized by law, shall be privileged and shall never be deemed a slander within the provisions of this Section. ’ ’
 

 This language, it will be observed, contemplates an absolute, not a qualified privilege and corresponds to that employed in the first two subdivisions of section 47 of the Civil Code.
 

 The Penal Code does not contain any provision, in terms, for any qualified privilege in slander cases, though such provision may be thought in some sort implicit in section 259, Penal Code, which provides that:
 

 "The injurious utterance of slander is presumed to have been malicious save when it is a communication to a person interested therein by one who is also interested, or by one who stands in such relation to- the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.”
 

 
 *Supp. 761
 
 The scope, however, given to any claim of qualified privilege under this latter section is greatly restricted by the construction given to the cognate provision of the libel statute (sec. 256, Pen. Code), of which, in
 
 People
 
 v.
 
 Turner,
 
 28 Cal. App. 766, 772 [154 Pac. 34], involving a newspaper publication of untrue defamatory matter respecting a candidate for office, it was said: “We are further satisfied, however, that Section 256 of the Penal Code has no application to cases of this character; ... In the present case it is not disputed that the publication was false. It was, therefore, not privileged.”
 

 What impresses us, however, about the provisions for absolute privileged contained in section 258 of the Penal Code, as well as any provision for qualified privilege that may be thought to be implied in section 259 of that code, as these enactments are applied to the present case, is the broad scope allowed by both for the jury’s construction of the conduct involved. The defamation here complained of Avas not uttered in the actual course of “any legislative or judicial proceeding or in any other proceeding authorized by law”. No official body or tribunal was in session, though both Faber and Clausey were members of the board of trustees of Coronado. The communication can, under section 258, be the subject of absolute privilege, therefore, only if uttered “in the proper discharge of official duty”. Even if it be conceded that the communication was deemed by Faber in some sort connected with his official duty as a member of a board charged with seeing that Coronado had a fit police chief, yet the evidence shows that it was made in an effort to convince Clausey that the investigation ought to be entrusted to Faber rather than to other members of the board. Whether, in all the circumstances, what Faber intended and was attempting was a “proper” discharge of official duty, appears to us a question for the jury rather than one which any court could in a criminal case decide as a question of law. We have not, of course, overlooked the expression of the Supreme Court in
 
 Carpenter
 
 v.
 
 Ashley,
 
 148 Cal. 422 [83 Pac. 444, 7 Ann. Cas. 601], wherein it is holden that in an action of slander, where the facts and circumstances under which the AA-ords were spoken are undisputed, the question Avhether they are privileged is one of law for the court to determine; and that it is in such circumstances error to submit that
 
 *Supp. 762
 
 matter to the jury. This, however, was decided in a civil action where the mental attitude of the defendant is not of primary importance. It seems to us inapplicable to a criminal prosecution wherein the malicious intent to injure or its absence, is of vital importance and has in itself a bearing on the claim that official duty was being “properly” performed. The like comment may be applied to any qualified privilege, if such there be, implicit in section 259. The defamation was manifestly “injurious” and it is saved from being presumptively malicious only in the circumstances defined in these sections. It can hardly be said as a matter of law to have been made “to a person interested therein, by one who is also interested”, since it was competent for the jury to believe that Clausey was not otherwise interested than as the matter was pressed on his attention by Faber and whether Faber “stood in such relation”, to Clausey, “as to afford a reasonable ground for supposing the motive for the communication innocent”, would seem manifestly a question of fact for the jury’s decision.
 

 We are given some pause, however, in any idea that section 259 does actually provide even a qualified privilege, by the circumstance that the presumption raised by it does not afford the only means of proving malice. Even if the presumption of malice there contemplated were, by reason of the saving clause, deemed in a given case to be dissipated, it would still be competent to show malice by evidence
 
 dehors
 
 the communication itself, in which case any privilege consequent merely on the absence of malice would disappear.
 

 In view of what has been said we cannot hold that, as a matter of law, the evidence is insufficient to sustain the verdict.
 

 It remains, however, to discuss the instructions given and refused.
 

 Defendant’s counsel asked the court to instruct the jury that it was its province to determine the law and the fact, citing in that connection section 9 of article I of the California Constitution. The requirement therein contained that the jury be permitted to judge of the law as well as the facts is, by its terms, applicable to prosecutions for libel. Slander was not, at the time the provision was adopted, a crime, having been made such by subsequent legislation, and, though libel and slander have in some degree a common char
 
 *Supp. 763
 
 acter, we do not feel called upon to read into the constitutional provision a requirement not in terms there that the questions of law in a slander prosecution must be left to the jury’s determination. It will be noted that the last sentence of section 251 of the Penal Code, carrying this constitutional requirement into the statute in libel cases, has no analogy in the subsequently enacted statutory provisions relating to prosecutions for slander, although in section 260 of the Penal Code the other provisions of section 251 were in substance repeated. The omission seems to have been
 
 ex industria
 
 made. In our opinion, therefore, this instruction was properly refused.
 

 The court gave, at the defendant’s request, the following instruction:
 

 “You are instructed that words 1 uttered in the proper discharge of official duty' or ‘when it is a communication to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information’, shall never be deemed a slander wdthin the meaning of section 258 of the Penal Code, which is the section under which this proceeding is being prosecuted.”
 

 This instruction is plainly erroneous, but since it errs on the side of the defendant and was requested by him he cannot complain of it in itself. We may point out, however, that it is in reality an attempt to blend matter contained in sections 258 and 259 of the Penal Code, respectively, and confuses the situation of absolute privilege provided for in section 258, with the exceptions contained in section 259 to the applicability of the presumption of malice there declared, and that it fails utterly to allow for the circumstance that any qualified privilege, if such there be, based in the saving clause in section 259 may be done away. with by proof, extrinsic to the communication involved, that it was animated by malice.
 

 The court gave upon the People’s request an instruction as follows:
 

 “I instruct you that a public official is as much entitled to protection from defamation as any other citizen and that
 
 *Supp. 764
 
 an individual who indulges in defamatory assertions about public officers is equally responsible for his acts with those who commit the same offense against private individuals and that such defamatory matter uttered against a public officer is not a privileged communication. ’ ’
 

 “I
 
 further instruct you that where a defamatory publication is false it is not privileged.”'
 

 We are constrained to the opinion that in giving this instruction the trial court fell into reversible error. The plain meaning of the last sentence, which is in no respect modified by what precedes it, is that no untrue statement of a defamatory nature can in any circumstance be privileged. The instruction appears to be based on the expression in
 
 People
 
 v.
 
 Turner, supra,
 
 to which we have already alluded in this opinion, but that case affords no authority for such a statement. What was there held, as we have already noted, was that the qualified privilege extended in libel cases by section 256 of the Penal Code has no application to communications in fact untrue. The cognate, though different, provisions with respect to slander are contained in section 259 of the Penal Code already discussed. Whatever their effect, they are additional to and distinct from the provisions for absolute privilege embodied in the last sentence of section 258. This distinction the instruction completely ignores and, taken alone, its plain effect was to tell the jury that if the communication was untrue they must bring in a verdict of guilty.
 

 The court also erred in giving, at the People’s request, the instruction that:
 

 “Absence of malice is an essential element of privilege and where malice is present the privilege does not exist. The law does not accord to anyone the privilege of maliciously making a false and defamatory statement concerning anyone. ’ ’
 

 This instruction is taken bodily from
 
 Morcom
 
 v.
 
 San Francisco Shopping News,
 
 4 Cal. App. (2d) 284, 289 [40 Pac. (2d) 940], which was a civil action for libel. The privilege under discussion was the qualified privilege declared by subdivision 3 of section 47 of the Civil Code, which we have already discussed. The expression states the law with respect to the situation in that case. It cannot properly be applied
 
 *Supp. 765
 
 in a criminal prosecution for slander to preclude a jury from passing on a defendant’s claim to such absolute privilege as is asserted in the instant case.
 

 The court gave a further somewhat involved instruction, apparently attempting to construe section 259 of the Penal Code, which we will not quote in full, but merely say of it, that, if taken by itself, it would, again, amount to telling the jury that no communication at all can be privileged unless it be both true and free from malice, which again ignores the provision for absolute privilege contained in section 258.
 

 The three erroneous instructions last referred to were of course inconsistent with the one that we have discussed, given at the defendant’s request, which erred almost as seriously in the other direction; but, when the four are taken together, the net effect is to leave the jury in absolute confusion with respect to the whole subject of privilege.
 

 The defendant asked and the court refused the instruction that “the casual presence of a third person (in this case Mrs. J. J. Clausey, the wife of J. J. Clausey) is not of itself sufficient to remove the privilege’’.
 

 The authority relied on in support of this request is
 
 Fahr
 
 v.
 
 Hayes,
 
 50 N. J. L. 275, at p. 280 [13 Atl. 261], a civil action, where it was said:
 

 “It is true there were hearers who are not shown to have been lawfully interested, and that the defendant had an opportunity in his own office, of making the disclosures to Thoma without further publicity. But he was entitled, not merely to warn but to convince Thoma, of the danger of trusting the plaintiff and for this purpose he had a right to confront the plaintiff and there declare whatever was of itself within the privilege. The presence of bystanders at that meeting was a mere casual incident, not in any sense sought for by the defendant, and for which, therefore, he should not be held responsible.’’
 

 We need not for the purposes of this case go so far as to decide that the rule thus announced in New Jersey ought, in this state, to be followed in its full extent, nor do we think the language of the proposed instruction happy. The question seems to be a new one in this jurisdiction. Treating it as such, we think it proper to say, since there will have to be a retrial of the instant case, that in our opinion the de
 
 *Supp. 766
 
 fendant is entitled to some instruction to the effect that the casual presence of an uninterested third party does not
 
 necessarily
 
 remove the privilege. What precautions the presence of such third party may require of the one claiming the privilege to prevent its abuse, seems to us in such a ease as this a question for the jury.
 

 By reason of the errors pointed out the judgment and order denying a new trial are reversed and the ease remanded to the municipal court to be retried.
 

 Turrentine, J., and Griffin, J., concurred.