## KATHERINE A. HAYDEN *vs*. GERTRUDE S. HASBROUCK.

### NOVEMBER 25, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, Sweetland, and Vincent, JJ.

*(1) Libel and Slander. Privileged Communications.*

A communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contains criminatory matter, which, without this privilege would be slanderous and actionable, and this is not confined to legal duties which may be enforced, but includes moral and social duties of imperfect obligation.

*(2) Libel and Slander. Qualified Privilege.*

The defendant was the president of a central organization of women's clubs, and a member of the board of directors of one of the affiliated clubs, of which club the plaintiff was president. The defendant, owing to her position, had been requested to take action in an endeavor to stop the repetition of certain larcenies which had occurred at meetings of the organizations and had commenced an investigation into the facts. The chairman of one of the committees, with the secretary of the club, requested an interview with the defendant for the purpose of discussing the plaintiff's connection with the larcenies. At this meeting it was charged that the alleged slanderous words were spoken concerning the plaintiff:—

*Held,* that the meeting was upon a matter as to which they all had duties, and the circumstances made it an occasion of qualified or conditional privilege.

*(3) Libel and Slander. Privileged Communications. Malice.*

*Held,* further that none of the statements were volunteered by defendant, but were in reply to questions asked by those who had an interest in the matter, which circumstance alone would render the occasion a privileged one.

*Held,* further, that the interview being a privileged one, defendant could not be held liable for the words spoken, although the same were untrue, and in ordinary circumstances would be actionable unless in uttering them she was moved by malice toward the plaintiff, not malice in law or the absence of legal excuse, but the motive of personal spite or ill will, sometimes called express or actual malice.

*(4) Libel and Slander. Privileged Communications. Express Malice.*

Unauthorized communications which are actionable carry with them the inference of malice and a plaintiff without proof can rely upon the presumption of malice which arises from the slanderous nature of the words. But in a privileged communication, the occasion repels the inference of malice, and there arises a presumption of good faith which the plaintiff

must satisfactorily rebut. The burden of proving express malice is thrown upon the plaintiff by reason of the privilege in the defendant.

(5)  *Libel and Slander.  Privileged Communications.  Malice.*

At an interview which was otherwise privileged, plaintiff claimed that certain statements of defendant were sufficient to support a finding of malicious. motive. Defendant, speaking of the rumors affecting plaintiff, said that she had "no positive proof," and that "as far as I am concerned, I am convinced":—

*Held,* that such statements were pertinent to the matter, contained no intrinsic evidence of malice and were within the privilege of the occasion.

(6)  *Libel and Slander.  Privileged Communications.  Malice.*

At such interview, in .reply to the statement, "What a terrible thing for Mr. X.," defendant replied, "It is no surprise to him, he has paid her off before":—

*Held,* that the previous conduct of plaintiff in this regard, having a material bearing upon the weight to be given the rumors then under consideration, was fairly related to the subject of the interview, and there being no evidence it was not honestly made, furnished no evidence of malice in view of the testimony.

(7)  *Libel and Slander.  Privileged Communications.  Malice.*

At an interview, which was otherwise privileged, in reply to a statement showing lack of motive for the alleged acts on the part of plaintiff, defendant replied, "why, they are as poor as Job's turkey." Plaintiff claimed this was an irrelevant reflection upon her, showing malice:—

*Held,* that parties in such a situation are not bound to absolutely legal relevancy, and the financial condition of plaintiff being regarded by the party making the statement as material to the discussion, the reply of defendant could not be regarded as entirely immaterial, and not being itself slanderous in the circumstances of the case, was insufficient to show malice.

(8)  *Libel and Slander.  Privileged Communications.  Malice.*

The language of privileged communications is not to be subjected to too strict a scrutiny, and merely by the use of adjectives or similes, a communication otherwise privileged is not rendered malicious.

(9)  *Libel and Slander.  Privileged Communications.  Malice.*

Privileged communications which cannot themselves form the basis for an action of slander are not admissible for the purpose of showing malice in other communications.

TRESPASS ON THE CASE for slander. Heard on exceptions of defendant and sustained.

SWEETLAND, J. This is an action of trespass on the case for slander. The declaration alleges that "at divers meet-

ings of the women's clubs to which the plaintiff and defendant belonged and at other gatherings of women held at divers dates not long before the time of the publishing of said slander at divers places in the city of Providence, various sums of money and articles of personal property had been taken from the garments and handbags and pocketbooks of divers members and guests of said clubs under. circumstances which indicated that such money and articles had been stolen." The facts thus alleged clearly appear in the testimony given at the trial. The declaration further alleges that in the presence of other women who knew the plaintiff the defendant was asked "if the plaintiff was suspected of having taken such money and articles," and the defendant spoke of and concerning the plaintiff, "It is only too true. As far as I am concerned, I am convinced"; and that later in the course of the same conversation when one of the other women said to the defendant, that it would be a shock to the plaintiff's husband to be told that his wife was a thief, the defendant replied, "That will be no surprise to him. He has paid her out before." To this declaration the defendant pleaded the general issue alone. The case was tried in the Superior Court before a jury and verdict was rendered for the plaintiff in the sum of eighteen hundred dollars. After the denial by the justice of the Superior Court of the defendant's motion for a new trial the case was certified to this court upon the defendant's exceptions, eighty in number, taken to rulings of the Superior Court before and at the trial, and to the decision upon said motion for a new trial. At the conclusion of the testimony, the defendant moved for the direction of a verdict in her favor, which motion was denied, and exception was taken. This exception is one of those now before us and in this opinion we will particularly discuss that exception.

What we consider to be the material facts in the case were not disputed at the trial. It appeared in testimony that at the time of the speaking by the defendant of the alleged slanderous words, on March 12th, 1909, there existed in the

State over thirty separate organizations of women known as women's clubs; that each of these clubs had a board of officers and directors; that the total membership of these clubs was over three thousand; that one of these organizations was known as the Providence Mothers' Club; that these various separate organizations were affiliated with each other in a central organization known as the Rhode Island State Federation of Women's Clubs, and that at the head of this affiliated body was an officer known as the President of the State Federation. On March 12th, 1909, and for a year previous thereto, the defendant held the office of President of the State Federation. On said March 12th, 1909, the plaintiff was the president of the Providence Mothers' Club; and one Mrs. Grieve and one Mrs. Lake were respectively the chairman of the hospitality committee and the secretary of said Providence Mothers' Club. The defendant, besides being the president of the central body, was a member of the board of directors of said Providence Mothers' Club. The taking of money and personal property from the cloak rooms of the various clubs as set out in the declaration became a matter of great concern to the officers and members of the various clubs; it appears in the testimony of one witness that a report of these occurrences was published in a newspaper. The defendant, as head of the organization, was requested by her associates to take action in an endeavor to stop the repetition of these larcenies. The defendant commenced an investigation and employed a lawyer to assist her. The defendant states that every rumor that was brought to her was connected with the plaintiff and with no other person. On March 12th, 1909, Mrs. Grieve and Mrs. Lake, aforesaid, requested and obtained from the defendant a private interview with her for the purpose of discussing the plaintiff's connection with said larcenies. It is at this meeting that the alleged slanderous words were spoken by the defendant, if spoken at all by her.

These women sought the interview with the defendant because she was the President of the State Federation. In

opening this interview, Mrs. Grieve stated that on the day before she, as chairman of the hospitality committee of the Providence Mothers' Club, had been asked to watch the plaintiff as the person who was accused "of taking things from the Churchill House." The circumstances of this meeting .made it an occasion of qualified or conditional privilege. It is a principle recognized by the courts of this (1) country and England that "a communication made bona fide upon any subject matter in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter, which, without this privilege would be slanderous and actionable." The word "duty" as used cannot be confined to legal duties which may be enforced, "but must include moral and social duties of imperfect obligation." *Harrison* v. *Bush*, 5 El. & Bl. 344. The courts have been liberal in their view of the nature of the duty or the interest, which must exist under this rule to render a communication privileged. The following are among many which have been held to be privileged occasions or privileged communications; the publication of charges containing defamatory matter made in a meeting of Congregational ministers against one of its members, *Shurtleff* v. *Stevens*, 51 Vt. 501; a complaint made to a church of which the plaintiff was a member charging him with perjury, *Remington* v. *Congdon*, 2 Pick. 310; words spoken in good faith, within the scope of his defence, by a party on trial before a church meeting, although they disparage private character, *York* v. *Pease*, 2 Gray, 282; the publication of charges made before a lodge of Masons, *Kirkpatrick* v. *Eagle Lodge*, 26 Kan. 384; words in themselves slanderous uttered in the presence of a conference on church discipline, *Jarvis* v. *Hatheway*, 3 Johns. 179; charges preferred by one member of an Odd Fellows Lodge against another member, *Streety* v. *Wood*, 15 Barb. 105; the letter written by a clergyman to the curate of another clergyman, charging the latter with

wrongdoing, *Whiteley* v. *Adams*, 15 C. B. N. S. 392. In
*Clark* v. *Molyneux*, 3 Q. B. D. 237, Brett, L. J., said: "I am
of the opinion that when the relations between two persons
is so intimate socially and professionally as that between a
rector or a vicar and his curate, and when it can be said that
the vicar is consulting with his curate, either upon the con-
duct of the curate or of the vicar in ecclesiastical matters,
that is an occasion which is privileged."

(2)    In the case at bar the interview in question was not an
occasion of trifling gossip, but was a serious consultation
upon a matter in which they were all interested as members
and officers of the associations named, and upon a matter
as to which they all had duties.  The exact nature of the
duty of Mrs. Grieve as chairman of said committee on
hospitality does not appear; but by her testimony her office
required her to watch any person suspected of purloining
property at club meetings.  Mrs. Lake was the secretary
and also a director of the Providence Mothers' Club, the
defendant was a director of that club.  These officers all had
interests and duties with reference to the charge of moral
delinquency made against the president of said club.  They
all had a common interest in the good reputation of the club
to which they belonged, which has been held to render
serious discussions, such as the one under consideration,
occasions of qualified privilege.  As subordinate officers the
other women came to the defendant as the head of the state
organization, and she had good reason to believe that they
asked the questions which brought out her replies from an
honest desire for information by which to regulate their
conduct or to aid them in the performance of their duties.
None of the statements of the defendant upon which the
action is based were volunteered by her, but were in reply
to questions asked by the others who had an interest in the
(3) matter under discussion, which circumstance alone would
render the occasion a privileged one.

The interview in question being a privileged one the de-
fendant cannot be held liable for the words alleged to have

been spoken by her, although the same were untrue and in ordinary circumstances would be actionable, unless in uttering them she was moved by malice toward the plaintiff. And the word "malice" in this connection does not mean malice in law, or the absence of legal excuse, but malice in the popular sense, the motive of personal spite or ill will. This is sometimes called express or actual malice. Unauthorized communications which are actionable carry with them the inference of malice and the plaintiff, without proof, can rely upon the presumption of malice which arises from the slanderous nature of the words. But in a privileged communication the occasion repels the inference of malice and there arises a presumption of good faith which the plaintiff is required to satisfactorily rebut. The burden of proving express malice is thrown upon the plaintiff by reason of the privilege in the defendant.

(4)

(5)   Our attention is called to certain statements of the defendant made in the course of said interview as furnishing intrinsic evidence of ill will on her part towards the plaintiff, and also to two subsequent occasions at which, it is claimed, the defamatory charges and statements were repeated by the defendant. It is claimed that these were properly submitted to the jury as evidence of spite or ill will; and that they are sufficient to support a finding of malicious motive actuating the defendant at said interview. It was testified at the trial that the defendant, at said interview, in speaking of the rumors and suspicions against the plaintiff, said that she had "no positive proof," and further that "as far as I am concerned, I am convinced." In our opinion, these statements were clearly within the privilege of the occasion, they contain no intrinsic evidence of malice; they were pertinent to the matter under consideration; in the circumstances the defendant properly stated the standing of the case against the plaintiff as the result of her investigation; and she might properly inform her companions of her honest opinion as to the plaintiff's guilt, based upon that investigation, which would naturally furnish much more of hearsay than of

positive proof. It is also in the testimony that at said (6) interview Mrs. Lake said, "What a terrible thing for Mr. Hayden," and the defendant replied, "It is no surprise to him, he has paid her off before." If this language of the defendant is interpreted to mean, as the plaintiff claims, that the plaintiff had been guilty of larceny on former occasions, it still furnishes no evidence of malice in view of the testimony. It was fairly related to the subject matter of the interview. The previous conduct of the plaintiff, in the regard stated, would have a material bearing upon the weight to be given the suspicions and rumors then under consideration. There is no testimony which indicates that this statement was not honestly made by the defendant. Upon the witness stand the defendant gave the name of the informant, upon whose information she based the statement in question; and said informant was in court at the trial. It is also strongly urged by the plaintiff as evidence of malice that at (7) said interview Mrs. Lake inquired, "Why, what reason could she have for doing such a thing, she has absolutely no reason for taking them, she has plenty of everything, she has all she wants and plenty of money?" and the defendant replied, "Why, they are as poor as Job's turkey." The plaintiff sees in this remark of the defendant such an irrelevant reflection upon the plaintiff, such exaggeration and violence of language as to indicate an ill will towards the plaintiff moving the defendant to speak the words declared upon in the (8) declaration. Merely by the use of adjectives or similes a communication otherwise privileged is not rendered malicious. People conferring as these women were in a confidential and privileged way are not rigidly bound in their talk to formal, responsive replies or to absolutely legal relevancy. The law makes allowance for differences of mental temperament and differences in habits of expression. While poverty in itself would furnish no evidence of fault or crime, Mrs. Lake regarded the financial condition of the plaintiff as material to the discussion; and the reply of the defendant to this question cannot in the circumstances be regarded as entirely immaterial.

If, upon a privileged occasion, one of the participants goes beyond the business in hand and makes an entirely irrelevant attack upon the character of the plaintiff or indulges in language regarding the plaintiff of an unreasonably violent or grossly exaggerated character, such circumstances furnish proper subjects for examination by the jury upon the question of malice. However, it is not the tendency of most courts to submit the language of privileged communications to too strict a scrutiny. Odgers on Libel and Slander, 5th edition, p. 355; *Spill* v. *Maule*, L. R. 4. Ex. 232; *Somerville* v. *Hawkins*, 10 C. B. 583. In *Laughton* v. *The Bishop*, 4 L. R., P. C. A., 495, at 508, the court said, with reference to a claim that malice attached to certain statements made upon a privileged occasion: "Some expressions here used undoubtedly go beyond what was necessary for self-defence, but it does not, therefore, follow that they afford evidence of malice for a jury. To submit the language of privileged communications to a strict scrutiny, and to hold all excess beyond the absolute exigency of the occasion to be evidence of malice would in effect greatly limit, if not altogether defeat, that protection which the law throws over privileged communications."

The expression used by the defendant which is now under consideration was not itself slanderous in the circumstances of this case. We also find it entirely insufficient to support a verdict that the defendant was actuated by malice toward the plaintiff in speaking the words complained of in the declaration.

In her attempt to fix malice upon the defendant the plaintiff further relies upon two so-called repetitions of the language complained of. The first of these was at the home of the defendant's attorney, in the course of an interview and during the time that the defendant, Mrs. Grieve and Mrs. Lake alone were present. This meeting was also held at the request of Mrs. Grieve and Mrs. Lake that they might obtain further information in regard to the matter discussed at the previous conference. The testimony as to what occurred

at this meeting does not show any repetition of the statements previously made. The conversation related to the desire of the other women to obtain the names of the defendant's informants. This the defendant was unwilling to divulge, on the ground, as she says, that the information was given to her in confidence, because of her position as President of the State Federation, and she was not at liberty to furnish the information sought. The second of these so-called repetitions was made at a meeting of the Providence Mothers' Club, held in the Mathewson Street Church. This was a special meeting of the club called by the plaintiff herself, by virtue of her office of president, for the purpose of discussing the statements of the defendant regarding the plaintiff made at the first interview hereinbefore referred to. By direction of the plaintiff a special invitation to be present at this meeting was sent to the defendant; and in response to that invitation the defendant attended the meeting. .It does not appear from the testimony that any persons were present except members of the club. At this meeting the plaintiff made a statement in regard to her conduct and called upon the defendant to reply. The defendant then read a statement in defence of her words spoken at the first interview with Mrs. Grieve and Mrs. Lake. As to neither the interview at the home of said attorney nor the meeting in said church does any intrinsic or extrinsic evidence of malice towards the plaintiff appear in the defendant's language or conduct. These are also clearly occasions of qualified privilege. Testimony as to what took place at these two meetings was admitted by the justice at the trial against the objections of the defendant. Exceptions to said rulings are included in the bill of exceptions.

The justice presiding at the trial permitted this testimony to go to the jury on the ground "that repetition of the original statement, as bearing on the question of the attitude of the person making it, bears on the question of malice," and later, in his charge, the said justice so instructed the jury. In these rulings and instructions the learned justice

was in error. This ruling permits the presumption of good
faith which attaches to the original statement to be destroyed
by another statement to which the presumption of good
faith also attaches. It might well happen that the necessi-
ties of her position and the prosecution of her proper in-
vestigation might force this defendant into three or four or a
greater number of privileged conferences similar to that held
with Mrs. Grieve and Mrs. Lake. Each would be privi-
leged; the communications made at each would be presumed
to be made in good faith; and as to each, without the other,
there might be no suspicion of malice; yet from a considera-
tion of all the communications, each without malice in itself,
a jury might be permitted to find malice in every one. In
support of this ruling of the Superior Court the plaintiff has
cited but one authority,—*Davis* v. *Starrett,* 97 Me. 574.
We have been able to find no other. The case of *Davis* v.
*Starrett* has been referred to in textbooks and other cases as
an authority for the principle that the repetition upon a
privileged occasion of words spoken at a previous privileged
occasion may be shown in evidence upon the question of
express malice in the defendant in his utterances at the first
privileged occasion. Certain language of the Maine court in
the opinion seems to warrant that view, but other observations
of the court in the development of its argument appear to
modify the broader general statement. The court says:
"It is easily apparent that slanderous words, otherwise
privileged, may be uttered in such a spirit or under such
circumstances as to indicate that they themselves are the
product of a hostile or malevolent disposition. If so, they
certainly would have a tendency to show that in uttering
some other but similar, slander, the speaker was moved by
the same disposition." There will be no dissent from the
proposition. If it appears that words are uttered upon a
privileged occasion in a malicious spirit the speaker forfeits
the privilege; the presumption of good faith is rebutted; as
to him the occasion ceases to be a privileged one; and his
slanderous words may be used to show a malicious motive

in his utterances upon a previous privileged occasion.   That seems to be the true intent of *Davis* v. *Starrett*.   We find the better reason and ample authority in favor of the rule that "privileged communications which cannot themselves form the basis for an action of slander are not admissible for the purpose of showing malice in other communications." *Shinglemeyer* v. *Wright*, 124 Mich. 230; *Watson* v. *Moore*, 2 Cush. 133; *McLaughlin* v. *Charles*, 60 Hun. 239; *Thompson* v. *McCready*, 194 Pa. St. 32; *Lauder* v. *Jones*, 13 N. D. 525.

We are of the opinion that there was no evidence of malice which justified the submission of the case to the jury.   The exception to the refusal of the justice presiding to direct a verdict for the defendant is sustained.

Opportunity will be given to the plaintiff on December 2nd, 1912, to show cause why the case should not be transmitted to the Superior Court, with direction to enter judgment for the defendant for costs.

*Gardner, Pirce & Thornley, Thomas F. Cooney, William A. Camfield*, of counsel, for plaintiff.

*P. H. Quinn, Waterman & Greenlaw, Charles E. Tilley*, for defendant.