[Civ. No. 4142. First Appellate District, Division One.—February 16, 1922.]

FLOYD R. LONGSWORTH, Appellant, v. S. T. CURSON et al., Respondents.

[1] LIBEL—QUALIFIED PRIVILEGED COMMUNICATION—ACTION FOR DAMAGES—BURDEN OF PROOF.—In an action for damages alleged to have resulted from the publication of a letter which it is admitted was a qualified privileged communication falling within the provisions of subdivision 3 of section 47 of the Civil Code, in that it was a communication "to a person interested therein, by one who is also interested," it is incumbent upon the plaintiff to show, first, that the communication was false, and, second, that the person making it was actuated by express malice. (On petition for hearing in supreme court, approval withheld.)

[2] ID. — PRIVILEGED COMMUNICATIONS — CHARACTER OF — MALICE — PROOF.—The privilege defined by subdivision 3 of section 47 of the Civil Code is not absolute, being in this respect unlike those classified by subdivisions 1 and 2 of said section as official, legislative, or judicial, but it falls within the class of qualified privileged communications where the occasion of their making rebuts the inference *prima facie* arising from their character as prejudicial to the reputation of the person concerned, and in which the burden is on the plaintiff to prove that there was malice in fact,

that the defendant was actuated by motives of personal spite or ill will.

[3] ID.—OBJECTION BY EMPLOYEES TO APPOINTEE—COMMUNICATION TO EMPLOYER—ABSENCE OF MALICE.—In this action for damages for libel based upon a letter from the employees of the report department of a tax collector's office to the tax collector objecting to the appointment of plaintiff as a member of the department, and stating the facts upon which they based their conclusion that plaintiff would be unable to work harmoniously with them, most of which facts had to do with plaintiff's conduct in connection with the World War, it could not be said that the sending of the letter itself, under the circumstances, was of itself evidence of malice, and the uncontroverted evidence showed that defendants were acting, as they conceived it, in furtherance of the welfare of the public office in which they were employed.

[4] ID.—COMMUNICATION OF ACTS TO PERSON INTERESTED—ABSENCE OF PRESUMPTION OF MALICE.—Where a communication imputing misconduct to another is made in good faith by persons who are interested therein to one who has an interest in the communication and a right to know and act upon the facts stated, no presumption of malice arises from the communication itself.

[5] ID.—PROOF OF MALICE—COMPENSATORY DAMAGES.—If a publication is libelous on its face, or is shown to be so by extrinsic evidence, the plaintiff may recover compensatory damages without proof of malice. (Opinion of supreme court on denial of hearing.)

[6] ID.—ABSENCE OF MALICE—PRIMA FACIE SHOWING—REBUTTAL.—When the defendant pleads that the publication was made without malice and upon a privileged occasion of the character defined in either subdivisions 3, 4, or 5 of section 47, the defendant must first make a *prima facie* showing of the absence of malice, and then, but not until then, the plaintiff may in rebuttal prove actual malice on the part of defendant. (Opinion of supreme court on denial of hearing.)

[7] ID.—PUNITIVE DAMAGES—ACTUAL MALICE.—A plaintiff cannot recover punitive damages without pleading and proof of actual malice. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

4. Complaint against public officer to person or body having power in matter as privileged, notes, 19 Ann. Cas. 1196; Ann. Cas. 1913C, 824; Ann. Cas. 1917C, 29; Ann. Cas. 1918B, 977.

John F. Poole and Robert L. Williams for Appellant.

Randall, Bartlett & White for Respondents.

KERRIGAN, J.—This is an appeal from a judgment of nonsuit in an action for damages alleged to have resulted from the publication of a communication charged to be libelous. The communication consisted of a letter, dated May 8, 1919, from the defendants, the employees of the report department of the tax collector's office of the county of Los Angeles, to W. O. Welch, the tax collector, and is in the following terms:

"Dear Mr. Welch:—

"Appreciating the fact that you are as interested in preventing the introduction of any discordant element into the report department, or any other subdivision of the tax office, the undersigned wishes to call your attention to and at the same time enter our protest against the recent appointment of Mr. Longsworth.

"Our objection to this person becoming a member of the department in which we are engaged is primarily predicated upon the well known reputation of the young man as a 'slacker' in evading the draft and in refusing to aid the government in the purchase of a liberty bond, and in other ways indicating and expressing lack of patriotism and loyalty.

"Furthermore, Mr. Longsworth has given many demonstrations during his service in the .tax office that he lacks resiliency in disposition and temperament, and exhibits a spirit of selfishness and unconcern for the welfare and condition of others that alone should deny him association with those who do express and exhibit sentiments of concern and kindness for those who come in contact with each other in the discharge of office or social duties.

"If yourself and the appointing power of associate co-workers in this and other departments of the county service are seeking harmony and the helpful conditions which can only prevail when the spirit of fairness and loyalty animate the attitude of each member of any particular department, you will recall the appointment of Mr. Longsworth as an appointee of the report office, and by this act indicate that you are as keenly interested in the harmonious atmosphere of

our surroundings as you are in the development of our efficiency and loyalty to duty.

"Should any additional ground be required to sustain our position in this request, we hold ourselves in readiness to submit same when called for.

"For the above consideration of those who have been loyal, faithful and considerate in their services to you in the past and at the present, we can only expect a favorable action upon this request."

The evidence shows that the plaintiff began working in the tax collector's office as an extra employee under civil service regulations in April, 1914. Five years later he received a letter from the tax collector notifying him that he was permanently appointed report clerk. At that time he was ill. Later in May, 1919, when he announced himself ready, the tax collector called his attention to said letter, and as a result of this letter his appointment was canceled.

The evidence also shows that at the time the letter was written the plaintiff was about thirty-four years old; he was a member of Standard Camp, G. A. R., Sons of Veterans, the Ohio State Society, and the young men's Bible class of the First Methodist church. Concerning his attitude to the draft law, he testified that he had registered, and in his questionnaire he had asked for a deferred classification upon the ground that his father and mother and sister were dependent upon him for support. On his cross-examination it was developed that his father and mother had visited California and stayed about a year, leaving for their home during the month plaintiff registered. While in California he had contributed to their support, but prior thereto and since then they lived on their farm in Ohio, where they made their own living. The plaintiff admitted on cross-examination that he had not contributed to the support of his sister since the year 1915, and that she was at the time he registered twenty-four years old, regularly employed and self-supporting. Other evidence introduced by plaintiff tended to show that rumors had been current to the effect that he was a "slacker," that he was well known as a conscientious objector to the war; that he had a well-known reputation as a slacker and draft evader, and that his parents were not, as declared by him in his questionnaire, dependent upon him for support. It is in the record and

uncontradicted that he had stated to two employees of the tax collector's office that he was a conscientious objector and opposed to the war; to another, at the height of the patriotic feeling aroused by the war he asserted that he was personally and religiously opposed to the conflict.

On the subject of his financial support of the war, the plaintiff testified that he purchased Liberty bonds to the extent of $250, and war savings stamps in an amount of $60, but did not make these purchases through the tax collector's office as was the case with his fellow-employees; that upon one occasion, when invited by a coemployee to purchase war savings stamps, he replied that he had "better use for his money."

Concerning his conduct in the tax collector's office and the charge that he was selfish and exhibited a spirit of unconcern for the welfare of others, it appears, briefly, that he was controversial, that occasionally he stubbornly resisted doing the work as suggested, claiming to have a better method of doing it than the one in operation, and that he was "uniformly disliked." Nor did he contradict the testimony of his own witnesses that he never contributed to funds raised in the office for different purposes, e. g., to purchase flowers for deceased employees of the office, or that on one occasion he refused to contribute twenty-five cents to a fund raised about Christmas-time "for one of our boys that had been crippled during the war" and who "had a wife and two children."

The letter forming the basis of the action was signed by all the regular employees of the report department except one—the head of the department—who for that reason deemed it inexpedient to do so. It was intended originally that a committee of one representing the employees should wait on the tax collector and enter their protest to the confirmation of the appointment, but it was finally decided that the matter should be presented in the form of the foregoing letter, and it was agreed among the subscribers thereto that it should never be spoken of nor referred to. The author of the letter, called as a witness for the plaintiff, testified that in writing it he was not actuated by motives of malice or ill will toward the plaintiff.

Upon the conclusion of the plaintiff's case the defendants moved for a nonsuit, which was granted, and the correct-

ness of this ruling depends upon whether or not, giving the evidence the construction most favorable to the plaintiff, it shows the existence of malice on the part of the defendants or any of them.

[1] It is admitted that the letter was a qualified privileged communication falling within the provisions of subdivision 3 of section 47 of the Civil Code, which reads: (A privileged communication is one made) "(3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information." When the plaintiff depends upon such a communication in order to recover it is incumbent upon him to show, first, that the communication is false; and, second, that the person making it was actuated by express malice, and the burden of proving malice is on the plaintiff.

[2] The privilege defined by subdivision 3 of section 47 of the Civil Code, above set forth, is not absolute, being in this respect unlike those classified by subdivisions 1 and 2 of the same section as official, legislative, or judicial; but it falls within the class of qualified privileged communications where the occasion of their making rebuts the inference *prima facie* arising from their character as prejudicial to the reputation of the person concerned, and in which the burden is on the plaintiff to prove that there was malice in fact, that the defendant was actuated by motives of personal spite or ill will.

In the case of *Gatewood* v. *Garrett*, 106 Va. 552 [56 S. E. 335], one of the questions before the court was whether or not the following instruction given to the jury correctly stated the law: "If the jury believe from the evidence that the defendant spoke the words, or any of them, as charged, in the declaration of and concerning the plaintiff, yet the presumption of law is that he spoke them honestly, believing in the truth of his statement, although such statements in fact were false or founded upon the most erroneous information; and in order for the plaintiff to recover in this action the burden is upon him to prove to your satisfaction that such statements were spoken with actual malice in

fact towards the defendant.'' In deciding this question the
court stated: ''It is not denied that this is a correct state-
ment of the law. The occasion was privileged, and to make
the defendant liable he must be shown to have misused the
occasion to gratify his malice; the presumption being that
he believed the statement to be true.''

In the case of *Hayden* v. *Hasbrouck,* 34 R. I. 556 [42
L. R. A. (N. S.) 1109, 84 Atl. 1087], at the conclusion of the
testimony the defendant moved for a directed verdict upon
the same grounds as were urged here for a nonsuit. The
appeal there was from an order denying the motion. In the
course of the opinion the court states: ''The interview in
question being a privileged one the defendant cannot be held
liable for the words alleged to have been spoken by her, al-
though the same were untrue and in ordinary circumstances
would be actionable, unless in uttering them she was moved
by malice towards the plaintiff. And the word 'malice' in
this connection does not mean malice in law, or the absence
of legal excuse, but malice in the popular sense, the motive
of personal spite or ill will. This is sometimes called ex-
press or actual malice. Unauthorized communications which
are actionable carry with them the inference of malice, and
the plaintiff without proof can rely upon the presumption
of malice which arises from the slanderous nature of the
words. But in a privileged communication the occasion re-
pels the inference of malice, and there arises a presumption
of good faith which the plaintiff is required to satisfactorily
rebut. The burden of proving express malice is thrown
upon the plaintiff by reason of the privilege in the defend-
ant.''

Section 48 of the Civil Code provides: ''In the cases pro-
vided for in subdivisions 3, 4 and 5 of the preceding section,
malice is not inferred from the communication or publi-
cation.'' (See, also, *Berot* v. *Porte,* 144 La. 805 [3 A. L. R.
1651, 81 South. 323].)

[3] While the evidence shows that the plaintiff registered
under the draft act and purchased government bonds, it is
still true that the evidence shows without contradiction that
he was regarded and bore the reputation of a man who
had not discharged his duty to his country while engaged
in war with a foreign enemy. That this reputation was not
without foundation was shown by the evidence admitted of

the conduct and statements of the plaintiff, and by the inexcusable prevarication through which he claimed a deferred classification. At the date of the letter this country had but recently emerged from armed conflict with an aggressive enemy wherein the patriotic spirit of our citizens had been intensely aroused, and where the burdens imposed by the necessities of the conflict had been great, rendering any evasion of duty by a citizen inexcusable, and calculated to justly arouse the indignation of those whose consciences, while not of that sort which forbade them to take up arms, did interpose an effective barrier to any shirking of duty. Under these conditions it cannot justly be said that the sending of the letter under the facts narrated was of itself evidence of malice, nor that the complaint concerning plaintiff's conduct in the office was not made in good faith. The uncontroverted evidence shows that the defendants were acting, as they conceived it, in furtherance of the welfare of the public office in which they were employed. Certainly no malice can be said to have been shown by the mere writing of the letter, and none was shown independent of the letter. [4] Where, as here, a communication imputing misconduct to another is made in good faith by persons who are interested therein to one who has an interest in the communication and a right to know and act upon the facts stated, no presumption of malice arises from the communication itself (Civ. Code, sec. 48; 25 Cyc. 385, 388; *Bayliss* v. *Grand Lodge*, 131 La. 579 [59 South 996]).

It follows that there was no error in granting the motion for nonsuit. The judgment is, therefore, affirmed.

Richards, J., and Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 17, 1922, and the following opinion then rendered thereon:

THE COURT.—The letter complained of does not show malice on its face. The evidence showed, without substantial contradiction, that it was written and published without malice by certain of the employees in the tax collector's office to the tax collector himself. All of these per-

sons were interested in the matter of the appointment of the plaintiff to an official position in that office. It was therefore published upon a privileged occasion and was a privileged publication within the meaning of subdivision 3 of section 47 of the Civil Code, and the nonsuit was properly granted on that ground.

The letter does not charge that the plaintiff was in fact a "slacker," but only that he had a "well-known reputation" as such. The evidence shows that he had that reputation among the employees in the office. The question whether or not his conduct justified that reputation is not decisive of the question whether or not such repute existed. The statements in the opinion of the district court as to his conduct are not in all respects supported by the record. The plaintiff denied that he had ever said to any person that he was a conscientious objector and was personally and religiously opposed to the war. His father and mother did not, as the opinion says, leave California for their home in Ohio, during the month in which plaintiff registered for the draft, that is, in September, 1918, but remained in California until September, 1919. The district court evidently mistook the date as given in the record. It does appear, however, and without contradiction, that neither his father nor mother were dependent on him for support in September, 1918, or at any other time, and that his sister was not dependent on him at that time, nor for the three preceding years.

We do not approve of the statement in the opinion of the district court that the plaintiff in an action for libel for the publication of such a letter as that here complained of must show "that the person making it was actuated by express malice, and the burden of proving malice is on the plaintiff."

[5] Under our code if a publication is libelous on its face, or is shown to be so by extrinsic evidence, the plaintiff may recover compensatory damages without proof of malice. [6] When the defendant pleads that the publication was made without malice and upon a privileged occasion of the character defined in either subdivisions 3, 4, or 5 of section 47, the defendant must first make a *prima facie* showing of the absence of malice, and then, but not until then, the plaintiff may in rebuttal prove actual malice on the part of defendant. (*Snively* v. *Record Pub. Co.*, 185 Cal. 565 [198 Pac. 1, 6].) [7] It may be added that the plain-

tiff cannot recover punitive damages without pleading and proof of actual malice. Actual malice was alleged and punitive damages were claimed in the complaint, but there was no proof to support the allegation. For these reasons we are satisfied with the decision affirming the judgment.

The petition for rehearing is denied.

Shaw, C. J., Wilbur, J., Lawlor, J., and Lennon, J., concurred.