LILLIAN M. HEBB *vs.* THOMAS A. JENCKES.

APRIL 6, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action for slander, which was tried before a justice of the superior court sitting without a jury and resulted in a decision for the plaintiff for $500. The case is here on defendant's exceptions to such decision and to the trial justice's ruling admitting the testimony of defendant's stenographer, Genevieve Trybulski, as to what he said to her about the plaintiff.

Defendant is a practicing lawyer in Providence. Until September 21, 1942, he employed the plaintiff as his office assistant and stenographer and she had been so employed for four years. On that date, with her wages in arrears and unpaid, for which she later sued defendant, she voluntarily resigned to take other employment. On September 28, 1942, defendant wrote to the plaintiff and charged her with taking away with her from his office certain record books and various articles of property belonging to him. In that letter he demanded the return of such books and property or he would "turn the matter over to the police", and he added: "In thinking over your period of employment with me, there are so many things which need explanation that, unless a thoroughly satisfactory explanation of your apparently un-American conduct is made to me, I am seriously considering turning over certain facts in my possession to the F. B. I." Apparently defendant did not publish such letter to anyone but the plaintiff.

However, sometime later, in December 1942, defendant told Sarkis Tatarian, a lawyer who occupied the same suite of offices with him but was not associated with him in his law practice, that plaintiff had taken away with her the key to his office; that she was meeting with the Gestapo; and that she had taken papers from his files and kept them. Tatarian testified that defendant repeated the same accusations about three or four times after that date. Defendant,

at about the same time, also told another lawyer, Malcolm D. Champlin, in a like relation to defendant as was Mr. Tatarian, that plaintiff was a member of the Gestapo, an enemy alien, and that she had taken two of his record books and had kept a key to his office in order to obtain military secrets from his files and take them to the Gestapo. He told Miss Trybulski that plaintiff had taken away from his office certain property belonging to him and that she was meeting with the Gestapo.

Plaintiff denied all such accusations and innuendoes and testified that, after leaving defendant's employ, she worked for a firm that was manufacturing war products and also for the Civilian Defense Council. She further testified that she was not an enemy alien nor a member of the Gestapo. Her testimony was not contradicted in any way and defendant produced no evidence of any kind, either that plaintiff was a member of the Gestapo or that she ever met with a member of that organization. Defendant merely testified as to his suspicions of the plaintiff along such lines but nothing in his testimony presented the slightest basis, inferentially or otherwise, to support his accusations against her. Nor did he offer any evidence that she had ever taken and kept any of his property or taken out information concerning war secrets from his files. Indeed, there was no reliable testimony that he had any such secret files.

Defendant sought to excuse his statements to Tatarian, Champlin and Miss Trybulski on the ground that they were privileged communications to persons with an interest. He also sought to justify his conduct on another ground of privilege, namely, that, as an officer of the Provisional Regiment of the Rhode Island State Guard, especially charged with internal defense, it was his duty to act upon his suspicions of plaintiff's un-American conduct and possible connection with the enemy. These contentions were fully presented at the trial and were considered by the trial justice in reaching his decision.

At the conclusion of the evidence and after hearing argu-

ment of counsel on each side, the trial justice reserved decision and later handed down a rescript, in which he pointed out the evidence on which he relied, and also that which he had disregarded in reaching his decision. He expressly stated that he found the words and statements which were uttered to Tatarian, Champlin and Miss Trybulski, that is, those set out in paragraphs 1 and 2 of the plaintiff's further bill of particulars, to be false and defamatory and that defendant had no reasonable ground to believe them to be true. He found further that they were not spoken or published on any privileged occasion; that they were not *bona fide* communications to protect the interest of any person in the subject matter of such communications; and that they were made recklessly and without regard to the consequences to the plaintiff.

We have carefully examined the evidence and we are of the opinion that the above findings are correct. With reference to Miss Trybulski's testimony, we see no reason why she should have been excluded from testifying. If her testimony disclosed that the communications were made to her in the protection of some interest which she had in the subject matter of such communications, it would be privileged, but her testimony actually showed no such interest whatever, and it was properly admissible against the defendant. However, even if we were to exclude all of her testimony, there would remain ample evidence to support the trial justice's decision.

The only other question is the amount of the damages. Viewed solely on the basis of compensation they appear excessive. However, the trial justice expressly found that defendant uttered and published the defamatory words recklessly and without regard to the consequences to the plaintiff. Under such a finding, assessment of punitive damages is proper. *Laudati* v. *Stea,* 44 R. I. 303. It is clear from his rescript that the trial justice, in estimating the damages, took the reckless nature of the defendant's conduct into consideration and treated it as equivalent to malice, which

quite likely influenced him to fix the damages of $500 as more or less punishment.

While the damages, even when viewed as both punitive and compensatory, are very substantial, we cannot say that they are grossly excessive and, therefore, under our well-established rule, we cannot disturb them.

Defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

### On Motion for Reargument
#### JUNE 7, 1945.

Per Curiam. After our decision in the above case was filed the defendant asked and received permission to file a motion for reargument. Pursuant to such permission he has filed such a motion, setting out therein numerous reasons on which he bases his contention that justice requires a reargument of the case. We have carefully considered such reasons and we are of the opinion that they are without merit.

Motion denied.