**BOSTON MUTUAL LIFE INSURANCE COMPANY, Defendant, Appellant,**

v.

**Albert A. VARONE, Plaintiff, Appellee.**

**No. 5894.**

United States Court of Appeals
First Circuit.

May 14, 1962.

---

4. But see Chlupsa v. Posvic, 113 F.2d 375 (7 Cir. 1940).

James K. Edwards, Providence, R. I., with whom William H. Edwards and Edwards & Angell, Providence, R. I., were on the brief, for appellant.

Albert B. West, Providence, R. I., with whom Leo T. Connors and Kiernan, Connors, Kenyon & Wiley, Providence, R. I., were on the brief, for appellee.

Before HARTIGAN and ALDRICH, Circuit Judges, and CAFFREY, District Judge.

ALDRICH, Circuit Judge.

This is an action for libel. The defendant is a Massachusetts insurance company which formerly employed the plaintiff as an agent or solicitor in Rhode Island, where this cause arose. The alleged libel was a letter written by the defendant to the Insurance Commissioner of Rhode Island, stating that the plaintiff had been "discharged for misappropriation of Company funds and shortages in his accounts." The defendant pleaded truth and privilege. The court declined to direct a verdict for the defendant, the jury found for the plaintiff, and the defendant appealed.

In September 1956 the plaintiff made some policy adjustments for an insured, a Mrs. Oliver, following which he retained part of the proceeds in his possession, contrary to company rules. His explanations when called to account, and at the trial, as to an intended legitimate disposition of these funds did not answer his failure to have turned them over immediately, much less his failure to have informed either the company or Mrs. Oliver of what he was doing. His claimed good faith, in other words, did not necessarily command belief.[1]

On December 7 the plaintiff was discharged. The same day the company so notified the Commissioner, and requested that his license to act as its agent be canceled. This was its legal obligation. In its letter it stated that the discharge was for "violation of company rules and regulations," and that the "violation involved company checks and misappropriation of same. Restitution was made." The reason for discharge, although not required by statute, was furnished pursuant to a standing order of the Commissioner. On January 4, 1957, the Commissioner asked for a further report. By this time the plaintiff's accounts had been audited and a number of shortages had been discovered. There was a conflict as to whether these shortages were routine. On January 7 the company wrote the Commissioner the letter in question. This letter, and not others written before or since, is the sole asserted basis for the action. Plaintiff's principal claim as to damages was based on the fact that the Commissioner disclosed its contents to the agency departments of other companies with whom plaintiff thereafter, unsuccessfully, sought employment. The jury found in plaintiff's favor and awarded $15,000 compensatory and $5,000 punitive damages.

---

1. Although at the trial plaintiff sought to show that his ensuing difficulties began with some confusing, and perhaps erroneous, instructions from one of his superiors, and from the fact that the company had mistakenly given him too large a check to deliver, these circumstances did not answer all the charges, and even they were not advanced by him at the time. Though we find plaintiff's testimony not always easy to follow, it was uncontradicted that when in mid-October he was given checks totaling $236 to deliver to Mrs. Oliver, he caused her to endorse them and cashed them himself in violation of company rules, and gave her only $113 or $123. The balance he retained, again contrary to company rules.

When, subsequently, the company informed him that it had made a mistake and that the $236 had been an overpayment by $58, he obtained another $22 from her, and gave her a receipt for $58 (incidentally, the only receipt he gave her). He paid the company $58 and retained the rest until, following a complaint by Mrs. Oliver, he was called to account on November 28. At this time he said he was keeping the balance to effect some adjustments on some other policies, but that it was a "foolish, blundering transaction," and that he had "withheld money * * * with no instructions to do so." On the record there is no assurance that any accounting would ever have taken place if Mrs. Oliver had not complained.

Before considering this appeal it would be well to analyze both the precise meaning and the substance of the defamation for which the plaintiff seeks relief. Misappropriation means to apply to a wrong use. We might agree with the defendant that it does not necessarily import moral wrong, but, particularly when used as a cause for discharge, a jury could well find that it meant something more than a venial delay in accounting. We think there was a reasonable implication that the plaintiff had intended to retain these funds permanently. As to such intention, as already stated, the jury might have found either way. With respect to the shortages, we think again, where used in connection with a dismissal, that they meant not normal shortages, but shortages reflecting unfavorably on the desirability of plaintiff's employment. But if there were such shortages, we do not think the fact that defendant discovered them only after the date of the discharge was a material matter. The essence of the charge against the plaintiff and what damaged his reputation, and, conversely, what, in connection with issuing a new license, the Commissioner was interested in, was not the exact circumstances of his dismissal, but the nature of his misconduct. Cf. Thompson v. Boston Publishing Co., 1934, 285 Mass. 344, 348, 189 N.E. 210. There was testimony that the shortages were not routine. If that was so, the date they were discovered was not important. Cf. Maisel v. Financial Times, Ltd.,

(C.A.) [1915] 3 K.B. 336. Hence on this aspect, too, the jury might, or might not, have found substantial truth.

The defendant contends that the Commissioner, having licensing authority over agents, Rhode Island Gen.Laws (1956) 27–2–11; 27–3–15; 27–3–18; 27–3–34, had a right to acquire pertinent information as to plaintiff's conduct for his records; that defendant had a duty to reply; and that its disclosures, even if untrue in fact, were absolutely privileged. The contention is not without merit.[2] The circumstance that the defendant's statement was not made in a court of law does not preclude the assertion of this privilege. Sheppard v. Bryant, 1906, 191 Mass. 591, 78 N.E. 394; Rainiers' Dairies v. Raritan Valley Farms, Inc., 1955, 19 N.J. 552, 117 A.2d 889. See Developments in the Law: Defamation, 1956, 69 Harv.L.Rev. 875, 917. However, on its applicability to the particular facts at bar the courts are divided. See, e. g., Johnson v. Independent Life & Acc. Ins. Co., D.C.E.D. S.C., 1951, 94 F.Supp. 959; Robertson v. Industrial Insurance Co., Fla., 1954, 75 So.2d 198, 45 A.L.R.2d 1292; Grubb v. Johnson, 1955, 205 Or. 624, 289 P.2d 1067. No Rhode Island decision casts any light on the question. Since it is conceded that the defendant had at least a qualified privilege, and since we believe the case can be disposed of on that lesser ground, we will not pursue this controversial subject.

When a defendant has established that its publication was subject to a

---

2. The opinion of the Massachusetts court in Mezullo v. Maletz, 1954, 331 Mass. 233, 118 N.E.2d 356, where the question of whether a party committed as insane might sue the examining doctor upon a showing that his certificate was "malicious and in bad faith," is worth quoting. In upholding an absolute privilege, the court said, at p. 237, 118 N.E. at p. 359 "The privilege is a compromise between competing rights: the right of a person to be free from false statements touching his mental condition, and the right public and private of a thorough investigation when necessary by some tribunal before which the witnesses may speak without fear. 'It is more important that the administration of the law in the manner provided should not be obstructed by the fears of physicians that they may render themselves liable to suit than it is that the person certified by them to be insane * * * should have a right of action in case it turns out that the certificate ought not have been given.' Niven v. Boland, 177 Mass. 11, 14, 58 N.E. 282, 283, 52 L.R.A. 786. And, as the defendant has argued, the privilege would afford small comfort to the physician if there was a possibility that he would be subjected in every instance to an inquiry as to his motives."

qualified or conditional privilege, the burden shifts to the plaintiff. It is commonly said that the plaintiff's burden is to prove malice. Malice, however, when used in this connection, is a word sometimes considerably misunderstood. It may have nothing to do with ill will in the conventional sense. Essentially it means or requires an "improper motive," Hartmann v. Boston Herald Corp., 1948, 323 Mass. 56, 59, 80 N.E.2d 16; or "malicious motive," Hayden v. Hasbrouck, 1912, 34 R.I. 556, 566, 84 A. 1087, 42 L.R.A.,N.S., 1109; an intent to "abuse the occasion"[3] by using it as "a pretense," Remington v. Congdon, 1824, 2 Pick. (19 Mass.) 310, 315. To phrase this another way, it is an intent to do an act which goes beyond, or lies outside of the purpose of the privilege. Thus as recently pointed out in McBurney v. Times Publishing Co., R.I., 1961, 175 A.2d 170, abuse of the privilege, or "equivalent" as distinguished from "actual" malice, may be shown by the content of the publication constituting unreasonable selection, often called an unfair report. See Restatement, Torts § 611, comment d (1938). See also Metcalf v. Times Publishing Co., 1898, 20 R.I. 674, 40 A. 864. Or it may be shown by undue emphasis, either in form or by repetitious or otherwise excessive publication beyond the needs of the occasion. Galvin v. New York, N. H. & H. R. R., 1960, 341 Mass. 293, 168 N.E.2d 262. See Restatement, Torts § 604 (1938). As pointed out in Galvin, the fact that the defendant may have no actual ill will is immaterial.

 Alternatively, a statement may be fair in form and in content

(other than with respect to underlying truth, the error the privilege is designed to protect, Kent v. Bongartz, 1885, 15 R.I. 72, 22 A. 1023; Petition of Retailers Commercial Agency, Inc. (Shore v. Retailers Commercial Agency, Inc.), 342 Mass. 515, 174 N.E.2d 376), but malice in the form of ill will may have constituted the improper motive. Thus a busybody may volunteer unsought information, or matters long past may be revived, for an unprotected purpose. This is the typcial case where the privilege is shown to be abused by proof of the existence of ill will on the part of the defendant. But if the motivating force for the publication is shown not to be the ill will, its existence is immaterial. Incidental gratification of personal feelings is irrelevant.[4] That non-causative ill will does not destroy a privilege is most frequently illustrated by cases holding that the malice of a corporate representative who did not participate in the decision to publish is immaterial. McBurney v. Times Publishing Co., supra (ill will of reporter); Bander v. Metropolitan Life Ins. Co., 1943, 313 Mass. 337, 47 N.E.2d 595 (ill will of company's president). In the case at bar, even if it could be said (as to which we express no opinion) that the defendant was pleased to see the plaintiff in further difficulties, it is manifest that this did not occasion the defendant's letter, but that the reason it was written was the Commissioner's inquiry. The letter was duly responsive, and no more than responsive.

 The court's charge to the jury did not in all ways conform to these principles. Plaintiff's difficulties, how-

---

**3.** It is interesting to note that the Torts Restatement does not use the word malice at all. Section 599 ("General Principle") reads as follows, "One who publishes false and defamatory matter of another upon a conditionally privileged occasion is liable to the other if he abuses the occasion."

**4.** This may be tested with a simple example: Suppose two newspapers of opposing, and ardently partisan, political views. Plaintiff, a high public official, is arrested for larceny. The story is patently newsworthy, and privileged. Thompson v. Boston Publishing Co., 1934, 285 Mass. 344, 189 N.E. 210. Both papers publish similar accounts. The paper of plaintiff's party does so, of course, in sorrow; the other with corresponding joy. Could it be thought that the paper of the opposing camp is subject to losing its privilege by proof that it entertains general ill will towards the plaintiff?

ever, lie deeper. Sending the case to the jury at all involved a misconception of law. The purpose of a conditional privilege is to protect the utterance, on an appropriate occasion, of an inadvertent untruth. It is not to protect a conscious falsehood or, as is sometimes said, behavior which is not in good faith. See Hebb v. Jenckes, 1945, 71 R.I. 46, 42 A. 2d 252; Shore v. Retailers Commercial Agency, Inc., supra; De Ronde v. Gaytime Shops, Inc., 2 Cir., 1956, 239 F.2d 735. Thus a defendant cannot claim the privilege if he did not believe his statement to be true, or had no reason to believe it true. The court correctly charged the jury that the burden was on the plaintiff "of proving that the defendant abused said occasion * * * [namely] acted with malice, that is * * * did not have reasonable grounds to believe the truth of that statement." It erred, however, in adding a further alternative, "or did not exercise due and reasonable care to investigate and ascertain the truth." We have no affirmative ground to suppose Rhode Island would adopt what is clearly the minority view, see Shore v. Retailers Commercial Agency, Inc., supra, at 761, 174 N.E.2d at 380, that mere negligence may destroy privilege. See Hebb v. Jenckes, supra; cf. Laudati v. Stea, 1922, 44 R.I. 303, 117 A. 422, 26 A.L.R. 450. We find in the record no evidence that the defendant knew its statement was untrue. Cf. Kent v. Bongartz, supra (mere fact statement was mistaken is not evidence of malice.) Nor, whatever might be said with respect to negligence, could it be said that it had no reason to believe it to be true in substance.

■■ The plaintiff contends that he was entitled to go to the jury because the fact that defendant pleaded and sought to maintain the truth of its statement permitted the jury to find malice in case it found, as it could, that the plea was not sustained. The court charged the jury that punitive damages could be added for malice, and that an unsuccessful plea of truth might thus enhance damages, Tillinghast v. McLeod, 1891, 17 R.I. 208, 21 A. 345, but it carefully did not charge that this could be malice which would in itself defeat privilege. There was no prejudicial error. The Rhode Island court has not passed upon this question. The plaintiff relies principally upon Domchick v. Greenbelt Consumer Services, Inc., 1952, 200 Md. 36, 87 A.2d 831. In that case the defendant pleaded privilege and truth. The plaintiff's case established that defendant had a prima facie privilege. The defendant rested without attempting to prove truth. In holding that the unsustained and, for all that appeared, entirely unjustifiable plea of truth warranted a finding of malice defeating the privilege, the court said, at p. 46, 87 A.2d at p. 837, "[T]he plea of justification, if not sustained, furnishes proof on the record of continued malice, although none may, in fact, continue to exist."[5] In the case at bar the defendant introduced evidence well warranting its defense of truth. The Rhode Island court has held that where a defendant unsuccessfully pleads truth and becomes liable in damages, there may be an additional award of punitive damages seemingly even though the plea was made in good faith. Marley v. Providence Journal Co., 1957, 86 R.I. 229, 134 A.2d 180. Plaintiff's present contention, which would make the very existence of a cause of action, as distinguished from the enhancement of damages, depend upon the pleadings, would go a considerable step further.

■■ The reasoning in Domchick was that the plea was a repetition of the libel, and that repetition is evidence of malice. It is universally the law, however, that relevant pleadings are at the very minimum conditionally privileged, and the law of Rhode Island is that a

---

5. It is interesting to note that the only non-Maryland case cited by the court was Wolcott v. Hall, 1810, 6 Mass. 514, which examination shows neither held what it was stated to, nor even contained the language purported to be quoted from the opinion. To put it colloquially, someone sold the Maryland court a bill of goods.

publication upon a privileged occasion, in the absence of bad faith, is not evidence of malice. Hayden v. Hasbrouck, 1912, 34 R.I. 556, 84 A. 1087, 42 L.R.A.,N.S., 1109; cf. Thompson v. Globe Newspaper, 1932, 279 Mass. 176, 190, 181 N.E. 249. It would be illogical to hold that a defense made in good faith can, per se, create a cause of action where none existed before, and we will not ascribe such thinking to the Rhode Island court.

Since there was no basis on which the jury could properly find the plaintiff had met his burden of overcoming the privilege, the court should have granted the defendant's motion.

Judgment will be entered vacating the judgment of the District Court and ordering judgment for the defendant.

HARTIGAN, Circuit Judge, dissents.